UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FAYSAL SNOUSSI,

                                Plaintiff,

   -against-

**MEMORANDUM
& ORDER**
05 CV 3133 (RJD)(LB)

JOHN BIVONA, Special Agent, F.B.I.;
JOHN AUSTIN, Assistant Supervisor-In-Charge, D.E.A.;
RALPH REYES, Staff Coordinator, D.E.A.;
TODD LEPKOFKER, Group Supervisor, D.E.A.;
RODNEY ARRINGTON, Special Agent, D.E.A.;
ROBERT ZACHARIASIEWICZ, Special Agent; D.E.A;
MARK GREY, Special Agent, D.E.A.;
KENNETH ROBBINS, Former Task Force Officer, D.E.A.;
MATTHEW CONNOLLY, Former Special Agent, D.E.A.;
OREST ZACHARIASEVYCH, Special Agent, D.E.A.;
MICHAEL MENZER, Special Agent, D.E.A.;
WESLEY FRITZ, Special Agent, D.E.A.;
ROBERT FAGAN, Senior Special Agent, D.H.S.;
KEVIN GAINES, Senior Special Agent, D.H.S.;
CHER IANNACCONE, Senior Special Agent, D.H.S.;
JASON SAMUELS, Special Agent, D.H.S.;
MICHAEL McGARRITTY, Senior Special Agent, F.B.I.;
JOHN WHITE, NYPD Detective, F.B.I.;
KIERAN SMITH, Special Agent, F.B.I.;
AMY SOLEK, Special Agent, F.B.I.;
WILLIAM WIKSTROM, Special Agent, F.B.I.;
MICHAEL O'BRIEN, NYPD Detective, F.B.I.;
BEN LAMANA, Special Agent, F.B.I.;
SUSAN OSTROBINSKI, Senior Special Agent, F.B.I.;
DARRIN TURPIN, Special Agent, F.B.I.;
ERWIN RAMOS, Physician's Assistant, B.O.P.

                                Defendants.
------------------------------------------------------------------------X
DEARIE, District Judge.

       Pro se plaintiff brings this action alleging constitutional violations during and after his

arrest. Defendants move to dismiss, or in the alternative for summary judgment. For the

reasons set forth below, plaintiff's claims are dismissed in part.

## BACKGROUND[1]

In the early morning hours of February 3, 2003, plaintiff was arrested by a team of law enforcement officers at his home in the Astoria neighborhood of Queens County. Plaintiff had been indicted for conspiracy to distribute narcotics. The officers obtained arrest and search warrants prior to the arrest. Plaintiff later pled guilty to conspiracy to distribute hashish and was sentenced to thirty-seven months imprisonment and three years supervised release.[2]

Plaintiff commenced this action on June 9, 2005, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 338 (1971), alleging abuses committed by the arresting officers, as well as officers and staff at the Metropolitan Correction Center ("MCC") in Manhattan. Specifically, plaintiff alleges that defendants: (1) violated his Fourth and Fifth Amendment rights "by lacking 'probable cause' for a 'no-knock warrant' and/or

---

[1] Unless otherwise noted, the facts described here are undisputed. Plaintiff did not submit a response to Defendants' Local Rule 56.1 Statement of Material Facts as is required. Nonetheless, taking into account plaintiffs' *pro se* status, the Court exercises its discretion and looks to the factual allegations contained in plaintiffs' response, complaint, and other submissions, and deems admitted only those of defendants' statements that plaintiff nowhere contests. <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001).

[2] A review of the docket sheet pertaining to plaintiff's criminal case before Judge Kevin Thomas Duffy in the Southern District of New York, Docket No. 03-cr-102, does not provide any indication that the facts or issues asserted in the instant matter were broached during those proceedings. Plaintiff's first appearance before Judge Duffy was made on February 3, 2003, and he quickly entered a plea on March 14 of the same year. It is noteworthy, that there is no evidence that plaintiff made any motion to suppress or asserted any violation of his rights during his sentencing.

the violation of the knock and announce procedure;"[3] (2) "deprived plaintiff of his rights to be free from unreasonable use of excessive force during arrest under the Fourth Amendment;" (3) violated his First, Fourth, and Fifth Amendment rights "when they employed racial and religious statements (slurs) against [him];" (4) "violated his right to equal protection of the laws as guaranteed by the Fourteenth Amendment;" (5) damaged his furnishings and property in violation of his Fifth Amendment right to due process; and (6) "violated plaintiff's rights by not providing him adequate medical care . . . for [his] injuries sustained in/during the 'arrest.'" Compl. 8-10.

Plaintiff's original complaint named defendants Bivona and Ramos, together with three enumerated "John Doe" defendants and "all other unknown John Does." After receiving three extensions of time, totaling 120 days, to respond on behalf of Ramos,[4] the United States Attorney for the Eastern District of New York proposed a briefing schedule in order to file a motion to dismiss the complaint against Ramos for failure to state a claim upon which relief could be granted. Magistrate Judge Lois Bloom denied the request without prejudice and sought the U.S. Attorney's assistance, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), in identifying the individuals present during plaintiff's arrest and transfer to MCC. April 12, 2006 Order.

The U.S. Attorney asked this Court to reconsider the order on the grounds that the three-

---

[3] Because any "probable cause" claim related to plaintiff's arrest and subsequent prosecution would be barred, see Heck v. Humphrey, 512 U.S. 477 (1994); Cameron v. Fogarty, 806 F.2d 370 (2d Cir. 1986), the Court reads the first and second "counts" of plaintiff's claims together as a single claim for excessive force in violation of the Fourth Amendment, see Graham v. Conor, 490 U.S. 386, 394 (1989).

[4] Defendant Bivona was stationed on military duty in Iraq and not served until March of 2006.

3

year statute of limitations applicable to Bivens actions in New York had expired with respect to the John Doe defendants. The Court denied reconsideration. Jan. 31, 2007 Mem. & Order. The U.S. Attorney then identified twenty-five individuals "who may, *or may not*, be the individuals referred to as "John Doe" defendants in the above-referenced action." Defs.' Feb. 21, 2007 Letter, 1. Magistrate Judge Bloom amended the complaint accordingly and directed the United States Marshals Service to serve the newly identified defendants. Defendants, collectively represented by the U.S. Attorney's Office, now move to dismiss the complaint, or in the alternative for summary judgment.

## DISCUSSION

**I.     Standard**

In considering a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the Court "tak[es] as true the facts alleged in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699-700 (2d Cir. 1994). Where a plaintiff proceeds pro se, "a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).[5]

---

[5] Although the Supreme Court's recent decision in Bell Atlantic v. Twombly, 127 S.Ct. 1955 (2007) created "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings . . .," Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007), the Second Circuit

4

On a Rule 12(b)(6) motion, the Court "must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). "'When matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988)).

By contrast, in resolving a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a district court may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving that it exists by a preponderance of the evidence. Id.

**II.    Timeliness**

    **A.    Accrual**

Because Congress has not established a time limitation for Bivens actions, courts adopt a local state time limitation as federal law. See Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). The limitations period for Bivens actions arising in New York is three years. Owens v. Okure,

---

has clarified that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," id. at 157-58. The Court applies the plausibility standard to the instant motion.

5

488 U.S. 235, 251 (1989). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). A claim accrues when the plaintiff "knows or has reason to know" of the harm upon which his action is based. Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir.).

Plaintiff asserts that he has never represented himself in a lawsuit and suggests that because he only "learned about the violations of his rights from the law librarians [at MCC]. Therefore, the statute of limitations governing this action did not begin to run on February 03, 2003." Pl.'s Mem. in Opp'n. 8. Federal courts generally apply a discovery accrual rule when a statute is silent on the issue. See Rotella v. Wood, 528 U.S. 549, 555 (2000). "But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Id. Despite plaintiff's pro se status, it is clear that the limitations period began on the date of the incident—February 3, 2003—and that, therefore, absent tolling, it expired on February 3, 2006.

### B. Excusable Neglect

Plaintiff commenced the instant action on June 9, 2005, and defendants acknowledge that the action is timely with regard to the originally named defendants, Bivona and Ramos. Defendants nevertheless contend that "the [February 22, 2007]amendment of plaintiff's complaint to add the newly-named individual law enforcement officers as defendants is past the statute of limitations period." Defs.' Mem. in Supp., 12. Plaintiff responds that "had the United States Attorney not sought and received three extensions of time totaling 120 days in which to respond to the complaint on behalf of defendant Ramos, this Court would have requested the government's assistance sooner and within the limitation period." Pl.'s Mem. in Opp'n, 8-9. It

6

is clear that plaintiff's complaint was amended after the limitations period expired. However, the Court reads plaintiff's claim that he "believed that since the Court granted those extensions of time to the government, the Court will toll the limitation period," Pl.'s Mem. in Opp'n, 12, as a request under Fed. R. Civ. P. 6(b)(1)(B) to toll the limitations period retroactively for excusable neglect.

"The determination whether neglect is 'excusable' in a particular case rests with the sound discretion of the district court." Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984). In LoSacco v. City of Middletown, the Second Circuit explained that

> 'excusable neglect under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of movant.' Rather, it may encompass delays 'caused by inadvertence, mistake, or carelessness,' at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit.

71 F.3d 88, 93 (2d Cir. 1995) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 392, 388 (1993).

Defendants deride plaintiff's claim that the Court would have acted sooner absent Ramos' requests as "based on pure speculation." Defs.' Reply Mem., 10. They also assert that their requests for extensions "were justified and have no bearing on the running of the statute of limitations"[6] and did not prevent plaintiff from undertaking efforts to discover the identities of the John Doe defendants. Id. There is no doubt, however, as Magistrate Judge Bloom clearly

---

[6] Although the stated reasons are irrelevant to this analysis, the Court notes that all three requests for extension were made so that the U.S. Attorney could "investigat[e] the allegations," approve representation of Ramos, obtain his consent to be represented, and "review the case after the BOP fully investigates the allegations." Compare, Oct. 14, 2005 Letter, with Dec. 8, 2005 Letter and Jan. 9, 2006 Letter. Given the straightforward nature of the charges against Ramos and the U.S. Attorneys Office's considerable experience handling such matters, the Court finds it curious that this otherwise straightforward inquiry required four months to conduct.

stated in her Order, that "the Court would have requested the government's assistance sooner—and within the limitations period—had defendant Ramos not requested and been granted two extensions of time to respond." April 12, 2006 Order, 3. As a result, those otherwise independent requests do bear directly upon the running of the limitations period.

The Second Circuit has "recognized that a district court has an *obligation* to assist an incarcerated pro se litigant to obtain discovery necessary to identify . . . unidentified . . . defendant[s] in order to avoid dismissal." Wilson v. 103rd Precinct, 182 F.3d 902, 1999 WL 494868, *2 (2d Cir. 1999) (unpublished opinion) (emphasis added); see also, Valentin, 121 F.3d at 75. Although the Circuit "do[es] not require the district court to bring up the issue of discovery or prompt the defendant to seek such discovery," Wilson, 1999 WL 494868, *2, neither does it prohibit the district court from doing so *sua sponte*, as Magistrate Judge Bloom did here. Though Magistrate Bloom's initial Valentin request came after the limitations period expired, she clearly stated that, but for the extensions granted to Ramos she "would have requested the government's assistance sooner." April 12, 2006 Order, 3.

The resulting delay—one month—was not long; there is no evidence of bad faith; and plaintiff's excuse for failing to seek discovery sooner—especially considering his status as an incarcerated, pro se litigant—is not totally without merit. In light of Magistrate Judge Bloom's remarks, these factors outweigh any prejudice to the defendants.[7] Although plaintiff may not

---

[7] In addition, the Court notes Magistrate Judge Bloom's finding that "[t]o the extent that the government argues that any of the defendants present at the time of the events complained of would be prejudiced if their true names were added to the complaint now, I note that it is reasonable to charge the John Doe defendants with constructive notice of the facts of this case. The dates and circumstances of the alleged constitutional violations were clearly set forth in plaintiff's complaint, and all of the defendants named as 'John Does' were employees of various agencies of the federal government. Therefore, the Assistant Untied States Attorney knew or

8

have been wise, or even correct, to rely—as he claims he did—upon the eventual tolling of his discovery obligation, the Court finds this particular confluence of events to constitute excusable neglect. To rule otherwise would unfairly punish plaintiff for defendants' delays and force concerned judges presiding in similar cases in the future to issue <u>Valentin</u> requests upon counsel even before they have agreed to accept representation.

## III.    Sovereign Immunity

Magistrate Bloom's order amending plaintiff's complaint states in the caption that defendants are being sued "in their individual and professional capacities." Defendants argue that claims asserted against them "in their official capacities must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." Defs.' Mem. in Supp., 10. "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived." <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994). Defendants have provided evidence, uncontested by plaintiff, that demonstrates plaintiff's failure to assert claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* which constitutes a limited waiver by the United States of its sovereign immunity. <u>See</u> Schumacher Decl.; Holland Decl.; McGovern Decl.; Whitted Decl. Because plaintiff has failed to demonstrate the necessary exhaustion of administrative remedies under the FTCA, the Court clarifies that any suggested claims against defendants in their official capacities are hereby dismissed without prejudice.

---

should have known that plaintiff would seek to amend his complaint to reflect their true names." April 12, 2006 Order.

9

## IV. Negligent Denial of Medical Care

Plaintiff asserts that "defendants Ramos and John Doe #3 . . . violated [his] rights by not providing him . . . medical care for . . . injuries sustained in/during the 'arrest.'" Compl., 10.[8] More specifically, plaintiff claims that Ramos

> initially directed that plaintiff be taken to a hospital for treatment of his injuries—but defendant John Doe #3 refused Ramos' diagnosis and ordered Ramos not to send plaintiff to the hospital but to 'get him to sign.' This was accomplished by promising plaintiff that no one was available to take him to the hospital, but would be in the morning. In the following morning . . . plaintiff was not taken to the hospital and was forced to suffer in pain and agony for weeks.

Id. Defendants assert that "[p]laintiff failed to exhaust his administrative remedies pursuant to the [Prison Litigation Reform Act] and, as such, his amended complaint fails to state a claim upon which relief may be granted . . . ." Defs.' Mem. Supp., 22.

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997 *et seq.*, "federal prisoners suing under Bivens . . . must first exhaust inmate grievance procedures . . . ." Porter v. Nussle, 534 U.S. 516, 524 (2002). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ." Id. at 532. Because plaintiff has not demonstrated that he has pursued, much less exhausted, his administrative remedies pursuant to the PLRA and Bureau of Prisons policy, Owen Decl., 2-3, his claims for negligent denial of medical care are also dismissed without prejudice.

---

[8] After requesting and receiving a more detailed description of "John Doe #3" from plaintiff, defendants informed him and the Court that "there was no BOP officer working intake on the date and time in question who was approximately 5'8" tall and/or of Puerto Rican, or Hispanic, descent." Defs.' March 14, 2007 Letter to Plaintiff.

10

## V. Excessive Force

The Supreme Court has explained that analysis of an excessive force claim "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Conor, 490 U.S. 386, 394 (1989). The Court went on to state that:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures" of the person.

Id. (citation omitted). The reasonableness inquiry regarding an excessive force claim is an objective one and "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation." Id. at 397.

### A. Claims Against Defendant Bivona

Defendants assert that

> plaintiff's amended complaint includes no allegations concerning actions taken by Defendant Bivona which amount to constitutional violations. The only specific reference to Defendant Bivona is that he asked plaintiff for permission to search plaintiff's car (to which plaintiff concedes he *consented*), and that he questioned plaintiff about the location of narcotics (to which plaintiff admits he *voluntarily* provided).

Defs.' Mem. in Supp., 33. Plaintiff responds that his complaint

> specifically alleged that defendant Bivona was among the John Doe defendants who participated in the use of force by striking [him] with their fist and kicked him while he was lying on the living room floor, and clearly stated . . . that defendant Bivona threatened him with the use of force if he continued his refusal to consent to the search of his vehicles.

Pl.'s Mem. in Resp. 14.

Those parts of plaintiff's complaint and attached affidavit that describe the arrest, are not

always consistent.  Plaintiff claims that two *unknown* defendants "slammed me to the floor" and "crushed my face to the floor."  Compl., 5.  From this vantage point, it would seem difficult for plaintiff to observe who was doing what around him.  Nevertheless, he proceeds to describe observing other officers "beating" his brother and "disrespecting" his wife in separate rooms.  Pl.'s Aff. 2.  He then describes asking questions of certain other unnamed defendants "who accompanied defendants Bivona and John Doe #1" and being "punched in my face and kicked in my ribs by *different defendants* who were surrounding me."  Compl., 5 (emphasis added).  In plaintiff's affidavit, he also describes being interrogated about explosives and how "to emphasize each question *one of the agents* beside me would strike my elbow with what felt like a hard blunt object of some kind."  Pl.'s Aff., 3-4.  Later, plaintiff describes how Bivona and John Doe #1 took him down to their car where "Bivona, also threatened me with 'what happened before,' when I refused to give them permission to search my cars . . . ."  Id. at 6.

The Court agrees with defendants that plaintiff's complaint fails to attribute any of his allegations of excessive *physical* force to defendant Bivona.  See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegation of fact indicating a deprivation of rights . . . .").  Nevertheless, plaintiff has clearly alleged that Bivona *threatened* him with physical force.  It is not immediately clear whether or not such a threat, especially when made so soon after plaintiff was allegedly beaten, can constitute excessive force in violation of the Fourth Amendment.  Compare Cortez v. McCauley, 478 F.3d 1108, 1131 (10th Cir. 2007) (stating that "[p]hysical contact is not required for an excessive force claim—patently unreasonable conduct is" and noting "several prior cases finding excessive force [that] involved pointing guns and handcuffing bystanders for

12

brief periods of time in the process of executing warrants or searches") (citing Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) and McDonald v. Haskins, 966 F.2d 292, 294-295 (7th Cir. 1992)); with McNair v. Coffey, 279 F.3d 463 (7th Cir. 2002) (holding that calling numerous squad cars for backup and displaying an excessive number of guns does not violate the Fourth Amendment by giving fright or offense); Bratton v. New York State Div. of Parole, No. 05-CV-950, 2008 WL 1766744, *14 (April 14, 2008 N.D.N.Y.) ("In using [a] dog to help maintain control over the situation, it was reasonable for the officers to allow a limited degree of intimidation for the purpose of deterring plaintiff from attempting an assault or an escape."); and Duggan v. City of League City, Tex., 975 F. Supp. 968, 971 (S.D.Tex. 1997) (observing that "the Fifth Circuit has found that the law is uncertain regarding whether an excessive force claim can arise without physical injury to the Plaintiff") (citing Dunn v. Denk, 79 F.3d 401, 403 (5th Cir. 1996)). Ultimately, this Court need not determine whether plaintiff has asserted a cognizable claim for excessive force against Bivona because the very uncertainty surrounding this question entitles the defendant to qualified immunity.

Qualified immunity operates to shield government officials, acting within the scope of their employment, from individual liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A two-step sequential inquiry is applied to evaluate whether a particular defendant is entitled to qualified immunity. First, it must be decided whether the plaintiff has alleged a violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 231 (1991). To be "clearly established," the contours of the right must be "sufficiently clear that a reasonable official would understand that what he is doing

violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Because of the considerable uncertainty revealed in the case law cited above, this Court cannot find that defendant Bivona's alleged threats, even in the context of a recent beating, constitute the violation of a clearly established constitutional right. As a result, plaintiff's claims for excessive force against Bivona must be dismissed.[9]

### B. Claims Against Remaining Defendants

Defendants do not move for dismissal or summary judgement of the excessive force claims against the newly identified defendants. Even if they were to do so, the Court would deny those motions at this time because plaintiff has adequately pled a violation of his clearly established Fourth Amendment right to be free of excessive force and there is insufficient evidence on the record to determine which of those plaintiffs might be entitled to qualified immunity.

## VI. Plaintiff's Remaining Claims

Defendants have not argued specifically for dismissal of the remaining substantive claims against the newly named defendants. They do however address the merits of those claims, at least as applied to defendant Bivona. Because, petitioner has failed to state a claim upon which relief can be granted with regard to these claims, regardless of who specifically they might be alleged against, the Court now dismisses them *sua sponte* for the reasons explained below.

### A. Offensive Statements

Plaintiff's third claim asserts that "the defendants knew that the plaintiff had a clearly

---

[9] The same would naturally apply with respect to the allegations based on threats alone made against John Doe #1 once he is identified.

established right to be free from any verbal assault while in custody under arrest. . . . [And] would not have treated similarly situated non-minorities in the same manner and with the same abuse as was directed against the plaintiff on the account of his being Arab and Muslim, and such conduct violated this plaintiff's rights to equal protection." Compl., 9.[10] Separately, plaintiff's fourth claim alleges that defendants "showed their rationales when they employed racial and religious statements (slurs) against the plaintiff," and that these statements violated his First, Fourth and Fifth Amendment rights. Id. Because both claims stem from allegations of offensive verbal statements made by defendants against plaintiff, they are analyzed together.

The Second Circuit has repeatedly held that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Adams, 810 F.2d 358, 363 (2d Cir. 1987). In other words, "diffuse and expansive allegations are insufficient unless amplified by specific instances of misconduct." Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977). It is also clear that verbal harassment alone does not constitute a cognizable violation of an individual's constitutional rights. See, e.g., Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (finding claim that prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not

---

[10] Although plaintiff refers to his right to equal protection under the Fourteenth Amendment, the Court interprets this claim as arising under the Fifth Amendment since this case involves allegations against federal employees.

actionable"); Brown v. Brabazon, 95 CV 4183, 1998 WL 177612, *14 (E.D.N.Y. April 13, 1998) (stating that "allegations of threats or verbal harassment, without any injury or damage, do not state a cause of action"). Because plaintiff's assertion that defendants "would not have treated similarly situated non-minorities in the same manner" is conclusory and because verbal harassment alone is not constitute a cognizable claim under Bivens, plaintiff's third and fourth claims must be dismissed.

B. **Due Process Claim**

Plaintiff's fifth claim alleges that defendants "wantonly damaged and destroyed the plaintiff's and family members furnishings and property," conduct which "amounted to deprivation of property without due process of law . . ." Compl., 10. Defendants respond that "[u]ntil plaintiff makes a demonstration that [his] post-deprivation remedy [under the FTCA] is insufficient, his allegation that his property was allegedly damaged without due process must be dismissed." Def.'s Resp., 38.

The Supreme Court has held that in procedural due process claims, the deprivation "of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law," Zinermon v. Burch, 494 U.S. 113, 125 (1990), and that "due process is flexible and calls for such procedural protections as the particular situation demands," Morissey v. Brewer, 408 U.S. 471, 481 (1972). In some circumstances "a statutory provision for a postdeprivation hearing . . . satisfies due process." Zinermon, 494 U.S. at 128. The FTCA authorizes

> [t]he head of each Federal agency . . . [to] consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within

16

the scope of his office or employment . . .

28 U.S.C.A. § 2672. The Court agrees with defendants that in this case, the FTCA provides a statutory procedure that could properly remedy the alleged deprivation of property. Because plaintiff has failed to demonstrate that this remedy is insufficient, his due process claim is dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss plaintiff's claims against Bivona and Ramos is granted. In addition, with the exception of plaintiff's claim for excessive force, all of his claims against the remaining defendants are also dismissed. The Court directs Magistrate Judge Bloom to conduct limited discovery with regard to the excessive physical force claim.

SO ORDERED.

Dated: Brooklyn, New York
August 21 , 2008

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge