UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FAYSAL SNOUSSI,

                       Plaintiff,

   -against-                                                 05 CV 3133
                                                             (RJD)(LB)

JOHN AUSTIN, Assistant Supervisor-In-Charge, D.E.A.;
RALPH REYES, Staff Coordinator, D.E.A.;
TODD LEPKOFKER, Group Supervisor, D.E.A.;
RODNEY ARRINGTON, Special Agent, D.E.A.;
ROBERT ZACHARIASIEWICZ, Special Agent, D.E.A.;
MARK GREY, Special Agent, D.E.A.;
KENNETH ROBBINS, Former Task Force Officer, D.E.A.;
MATTHEW CONNOLLY, Former Special Agent, D.E.A.;
OREST ZACHARIASEVYCH, Special Agent, D.E.A.;
MICHAEL MENZER, Special Agent, D.E.A.;
WESLEY FRITZ, Special Agent, D.E.A.;
ROBERT FAGAN, Senior Special Agent, D.H.S.;
KEVIN GAINES, Senior Special Agent, D.H.S.;
CHER IANNACCONE, Senior Special Agent, D.H.S.;
JASON SAMUELS, Special Agent, D.H.S.;
MICHAEL McGARRITTY, Senior Special Agent, F.B.I.;
JOHN WHITE, NYPD Detective, F.B.I.;
KIERAN SMITH, Special Agent, F.B.I.;
AMY SOLEK, Special Agent, F.B.I.;
WILLIAM WIKSTROM, Special Agent, F.B.I.;
MICHAEL O'BRIEN, NYPD Detective, F.B.I.;
BEN LAMANA, Special Agent, F.B.I.;
SUSAN OSTROBINSKI, Senior Special Agent, F.B.I.;
DARRIN TURPIN, Special Agent, F.B.I.; and
GLENN OSTERMAN, Police Officer, N.Y.P.D.,

                       Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

**PAGE NO(s):**

TABLE OF AUTHORITIES .................................................. ii-iii

PRELIMINARY STATEMENT ............................................... 1

FACTUAL BACKGROUND .................................................. 2

ARGUMENT ............................................................... 3

    I.    Plaintiff Is Entitled To Discover The Identity Of Those Who Beat Him ....... 3

        a.    The scope of Rule 26 discovery is broad .......................... 3

        b.    Case law in the Second Circuit is overwhelming: Photographs are routinely discoverable without preconditions ...................... 5

    II.    Defendant Cannot Show "Good Cause" For A Protective Order Under Rule 26(C) ........................................................ 8

        a.    Defendants would not be unfairly prejudiced by producing the photographs as they are named Defendants who admittedly participated in Mr. Snoussi's arrest .............................. 8

        b.    Defendants will have ample opportunity to seek to discredit Mr. Snoussi ..................................................... 9

        c.    Alternatives are significantly more burdensome ................... 10

    III.    Defendants' Meager Authority Is Inapposite and Unpersuasive ............. 10

        a.    Criminal Procedural Protections have no bearing in this case ......... 11

        b.    The District Court case relied upon by defendants is inapposite, Wrong, and unsupported in the Second Circuit ................... 12

    IV.    Defendants Have Not Demonstrated That There Is Any Security Concern In Turning Over The Photographs ..................................... 13

CONCLUSION ............................................................ 14

## TABLE OF CONTENTS

**FEDERAL CASES**:                                                                                          **PAGE NO(s)**:

*Carter v. Hewitt*,
    617 F.2d 961 (3d Cir. 1980) .................................................... 11

*Castro v. City of New York*,
    No. 94 Civ. 5114, 94 Civ. 6767, 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995) ... *passim*

*Davis v. City of Chicago*,
    219 F.R.D. 593 (N.D.Ill. 2004) ................................................ 12, 13

*Gambale v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004) ...................................................... 8

*Inmates of Unit 14 v. Rebideau*,
    102 F.R.D. 122 (N.D.N.Y. 1984) .................................................. 4

*Jean-Laurent v. Hennessy*,
    No. 05-CV-1155, Docket Entry No. 39 (E.D.N.Y. July 13, 2006) .................. 7

*Kinoy v. Mitchell*,
    67 F.R.D. 1 (S.D.N.Y.1975) ...................................................... 4

*Lora v. Board of Ed. of City of New York*,
    74 F.R.D. 565 (E.D.N.Y. 1977) ................................................... 4

*Lozano v. City of New York*,
    No. 88 Civ. 0659, 1992 WL 116433 (S.D.N.Y. Apr. 17, 1992) ............... 1, 6, 13

*Mack v. Caspari*,
    92 F.3d 637 (8th Cir. 1996) .................................................. 9, 11

*Montgomery v. Greer*,
    956 F.2d 677 (7th Cir. 1992) ................................................. 9, 11

*Murphy v. West*,
    533 F.Supp.2d 312 (W.D.N.Y. 2008) ............................................ 7, 13

*Pridgen v. Doe*,
    No. CIV. A. WMN-98-720, 2000 WL 892873 (D.Md. May 26, 2000) ................... 7

*Santos v. New York City Police Sgt. Raymond*,
   No. 84-C8230, 1984 U.S. Dist. LEXIS 21223,
   1984 WL 1335 (S.D.N.Y. Dec. 14, 1984) .................................... 6

*United States v. Ash*,
   413 U.S. 300 (1973) ........................................................ 11

*Vargas v. Blyskal, et al.*,
   02 C 5451 (N.D. Ill. May 14, 2003) ......................................... 7

## PRELIMINARY STATEMENT

In a nine-page single-spaced brief in a *pro se* case, the United States Attorney managed not to cite the two leading cases in the Second Circuit, both which resoundingly reject any identification procedure prior to production of photographs of law enforcement officers in a civil rights case.[1] Instead, defendants cite twice to *Federal Criminal Practice: A Second Circuit Handbook*, and seek to apply criminal procedure to this civil case.

Defendants' motion is simply the latest attempt in an almost three-year effort to stonewall plaintiff from discovering which federal officers attacked and beat him on February 3, 2003. The photographs are relevant and non-privileged; the Federal Rules of *Civil* Procedure do not help defendants. So defendants strain, however creatively, to import criminal due process protections into this civil case. The result is a new, proposed class of litigant: not a civil litigant, not a criminal litigant, but a class of people (defendants in "civil rights cases involving the police," *Castro*, 1995 WL 699730, at *1) who somehow enjoy *both* the due process protections in a criminal case *and* all of the discovery devices (depositions, *et. al.*) under the Civil Rules.

There is no precedent in the Second Circuit for such a bizarre blending of civil and criminal cases. Discovery is broad under the Civil Rules, and particularly broad in civil rights cases. That is undisputed. The photographs are relevant and non-privileged. That is undisputed. This should be (and for courts in this Circuit, is) the end of the analysis.

If defendants prefer, plaintiff could depose all of the defendants, observe them, then decide whether to amend the complaint. But such a process would be wasteful and

---

[1] *Castro v. City of New York*, No. 94 Civ. 5114, 94 Civ. 6767, 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995) (Dolinger, M.J.); *Lozano v. City of New York*, No. 88 Civ. 0659, 1992 WL 116433 (S.D.N.Y. Apr. 17, 1992) (Francis, M.J.).

inefficient. "The fortuity that [the Court] chose to proceed in a somewhat more efficient manner," by seeking photographs first, "should not be used to penalize [plaintiff] here."[2]

The photographs should be produced immediately and without preconditions.

## FACTUAL BACKGROUND

Mr. Snoussi commenced this civil rights action *pro se* in June 2005 alleging, *inter alia*, that federal law enforcement agents used excessive force when they arrested him early in the morning of February 3, 2003, when he was asleep at his home in Astoria, Queens. Plaintiff alleged that defendants "slammed me to the floor," "crushed my face to the floor," "punched [me] in my face and kicked [me] in my ribs." Compl. ¶ 5.

The Complaint listed two named defendants (Bivona and Ramos) who have since been dismissed, and a number of "John Doe" law enforcement officers. On February 27, 2006, this Court directed the United States Attorney to identify the law enforcement officers involved in Mr. Snoussi's arrest. The United States Attorney vigorously protested this order, first moving for reconsideration before this Court, and then asking District Judge Dearie to set aside this Court's order. Both motions were denied.

Finally, a year later, on February 21, 2007, the United States Attorney provided Mr. Snoussi a list of twenty-five federal law enforcement officials who were present at his arrest.[3] The Amended Complaint lists these twenty-five individuals as named defendants.

On August 21, 2008, Judge Dearie granted, in part, defendants' motion to dismiss but allowed Mr. Snoussi's excessive force claims to proceed to discovery. On September 8,

---

[2] *Castro*, 1995 WL 699730, at *1.
[3] This list included officials from the Drug Enforcement Administration, Immigration and Customs Enforcement, the Federal Bureau of Investigation, the U.S. Bureau of Prisons, and the New York City Police Department.

2008, this Court ordered defense counsel to bring photographs of each of the remaining defendants to a conference on September 29, 2008, so that plaintiff could identify those defendants who will be subject to discovery on the excessive force claim.

After over two years of stonewalling, the United States Attorney again sought to block this Court's efforts to identify the officer defendants who beat Mr. Snoussi. On September 23, 2008, defendants moved, by letter motion, for a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

On November 4, 2008, this Court appointed the undersigned counsel for the limited purpose of resolving the identification of defendants. This brief is submitted pursuant to that appointment.

## ARGUMENT

Defendants seek an unprecedented ruling in this Circuit: the importation of criminal due process protections into a civil case. But the "identification procedure" defendants seek, Def. Ltr. at 3, is fundamentally at odds with the liberal discovery rules in civil — and particularly, civil rights — cases, and is directly counter to the case law and the practice in this Circuit.

I.   **Plaintiff Is Entitled To Discover The Identity Of Those Who Beat Him**

   a. **The scope of Rule 26 discovery is broad**

Plaintiff is plainly entitled to photographs of the officers who arrested him, indeed of anyone present at the scene of his arrest.[4] In this civil case, Rule 26 of the Federal Rules of

---

[4] To be clear, plaintiff is entitled to photographs of all the named defendants, all of whom were at the scene of the arrest. Despite defense counsel's representation that eleven of the defendants "were present only to guard the perimeter and/or conduct the searches," Def. Ltr. at 2, plaintiff is entitled to view these photographs to determine whether or not this inadmissible, unsworn,

*Civil* Procedure applies. Rule 26 is broad: "Parties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense — including . . . the identity and location of persons who know of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[5] It is undisputed that the photographs are relevant and not privileged. That alone should resolve the issue before the Court.

Discovery is particularly broad where, as here, a plaintiff asserts violations of constitutional rights: "Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984). As the Court in *Castro v. City of New York* explained in rejecting a similar motion by the City of New York:

> The logic of defendants' argument would result in conditioning document production on plaintiffs' submission to criminal identification procedures in many civil rights cases involving the police. But discovery in these types of cases is supposed to be particularly *liberal*, and there is surely no justification for making it more difficult to obtain here than in the ordinary run of cases.

No. 94 Civ. 5114, 94 Civ. 6767, 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995) (emphasis added, internal citation omitted); *see also Lora v. Board of Ed. of City of New York*, 74 F.R.D. 565, 579 (E.D.N.Y. 1977) (Weinstein, J.) ("Only strong countervailing public policies should be permitted to prevent disclosure when, as here, a suit is brought to redress a claim for violation of civil rights under the Constitution."); *Kinoy v. Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y. 1975) ("The Congressional policy in favor of broad enforcement of the civil rights laws supports complete discovery when their violation is alleged.").

---

hearsay representation is accurate. Given the sworn Declaration of Wesley Fritz, dated September 23, 2003, plaintiff does not seek Agent Fritz's photograph.
[5] Rule 34(a)(1)(A) states further that Rule 26 includes "photographs."

### b. Case law in the Second Circuit is overwhelming: Photographs are routinely discoverable without preconditions

Defendants routinely produce photographs in civil rights cases without preconditions, whether they be criminal "identification procedures," lineups, showups, or any of the restrictions proposed by defendants. And on the rare occasion where a litigant refuses to provide photos, courts in this Circuit routinely order their production, again without preconditions.

The leading case in this Circuit, which defendants simply fail to cite, is *Castro v. City of New York*. In *Castro*, plaintiff Myra Castro alleged that she was unconstitutionally strip searched by an NYPD officer whom she could not identify. 1995 WL 699730 at *1. She sought from defendant City of New York "production of photographs of five Black female officers assigned to the 26th Precinct at the time of the events in question," all of whom were non-defendants. *Id.* Although the City admitted the relevance of these photographs, it refused to produce them. Instead, like defendants here, the City sought to include filler photographs and "present them in a formal and recorded array session in order to test plaintiff Castro's ability to identify the officer who conducted the alleged strip search of her." *Id.* The Court flatly rejected defendants' request.

Judge Dolinger ruled that the City sought what amounted to a "criminal photo array" which is not "authorize[d]" by the "federal rules governing civil discovery." *Id.* As the Court noted, "defendants' position on this matter is plainly at odds with general case law on discovery standards" for any civil case, and "there is surely no justification" for placing a higher bar for discovery in a civil rights case. *Id.* "The logic of defendants' argument would result in conditioning document production on plaintiffs' submission to criminal identification procedures in many civil rights cases involving the police. But discovery in these cases is supposed to be

5

particularly liberal," *id.*, not (as defendants would have it) particularly restrictive. Judge Dolinger also noted that plaintiff "presumably could have conducted depositions" of the five officers instead of seeking photos: "The fortuity that she chose to proceed in a somewhat more efficient manner should not be used to penalize her here." *Id.*

The other leading Southern District case, which defendants again fail to cite, is *Lozano v. City of New York*, No. 88 Civ. 0659, 1992 WL 116433 (S.D.N.Y. Apr. 17, 1992).[6] In *Lozano*, plaintiffs alleged that defendants unconstitutionally arrested them and searched their homes. Plaintiffs sought production of the photographs of each of the individual police officers involved in the arrest and search. Defendants refused, contending this would constitute a "selective lineup." *Id.* at *1. The Court dismissed the argument out-of-hand, explaining that production of such photographs was fair and more efficient than the alternative:

> It is important for the plaintiffs to avoid unnecessary litigation by determining early in the process which individual police officers are subject to the claims raised. Thus far, the plaintiffs have simply named as defendants all the officers on the scene; by specifically identifying individual officers, they may be able to eliminate certain defendants altogether and limit the claims against others. The photographs are obviously an important element in this process. Because this is not a criminal case, the defendants' complaints that disclosure of the photos would constitute a "selective lineup" are simply inapposite.

---

[6] Defendants cite, but, appropriately, do not rely on *Santos*. Def. Br. at 5 (citing *Santos v. New York City Police Sgt. Raymond*, No. 84-C8230, 1984 U.S. Dist. LEXIS 21223, 1984 WL 1335 (S.D.N.Y. Dec. 14, 1984)). As Judge Dolinger noted:

> In [*Santos*], it was plaintiff who sought a photo array, presumably to establish the reliability of his identification of the defendant officer, and Judge Haight found his request to be reasonable, if unusual. This does not speak at all to the propriety of a party withholding relevant documents unless its adversary undertakes an identification procedure not contemplated in the Federal Rules of Civil Procedure.

*Castro*, 1995 WL 699730, at *2.

6

*Id.* at \*2.

This Court reached the same conclusion in *Jean-Laurent*. There, plaintiff sought to identify a John Doe officer who beat and strip searched him. Defendants opposed production of the photographs, and instead sought to generate photo arrays using filler photographs to avoid what they contended were the "problems of a suggestive photo array." This Court ordered the production of all photographs that matched plaintiff's description, holding that the "'problems of a suggestive photo array' are not at issue in this civil case." *Jean-Laurent v. Hennessy*, No. 05-CV-1155, Docket Entry No. 39, (E.D.N.Y. July 13, 2006 (Bloom, M.J.); *see also Vargas v. Blyskal, et al.*, 02 C 5451 (N.D. Ill. May 14, 2003) (attached) (granting plaintiff's motion to compel photographs of police officers at the scene of plaintiff's arrest and beating); *Murphy v. West,* 533 F. Supp. 2d 312, 317 (W.D.N.Y. 2008) (ordering production of photographs of John Doe correctional officers).

Because the law is so well-settled, it is rare for defendants to oppose the production of photographs. *See, e.g., Pridgen v. Doe,* No. CIV. A. WMN-98-720, 2000 WL 892873, at \*1 (D. Md. May 26, 2000) (civil rights complaint by inmate alleging excessive force; Court ordered production of photographs of four of the defendant officers involved in the incident; defendants raised no objection to the production of these photographs). The undersigned counsel's experience in any number of civil rights cases is that the defendant officers have always provided photographs to enable plaintiff to identify the officer assailants without objection. But whether defendants object or not, the case law in this Circuit all points to the same conclusion: the photos should be produced. *See supra.*

## II. Defendant Cannot Show "Good Cause" For A Protective Order Under Rule 26(c)

Against a background of liberal discovery rules in civil cases, and overwhelming case law in this Circuit (not cited by defendants) ordering discovery of photographs without preconditions, defendants seek, under the guise of Fed. R. Civ. P. 26(c), to import due process requirements in criminal cases into this civil case. Defendants have the burden under Rule 26(c) to demonstrate good cause to graft criminal due process protections into the Federal Rules. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) ("The party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection."). Given the fundamental differences between criminal and civil cases, there is no civil case in which a party could meet such a burden. But even if there were, this is not such a case.

First, production of such photographs would not unfairly prejudice defendants. Second, there is no good cause to bar the disclosure of photographs as plaintiff has the right to depose — and thus personally witness and identify — each defendant, which would be a less-efficient and more burdensome approach.

### a. Defendants would not be unfairly prejudiced by producing the photographs, as they are named Defendants who admittedly participated in Mr. Snoussi's arrest

If Mr. Snoussi can prove that he was the victim of excessive force, defendants are not innocents. Defendants *admit* they were present at the scene of the crime. Defendants therefore either participated in the force used against Mr. Snoussi, failed to prevent other assailants from beating Mr. Snoussi, or know who assaulted Mr. Snoussi. There is therefore no

risk of the "miscarriage of justice from mistaken identification" that defendants claim. Def. Ltr. at 4. Criminal line-up procedures are motivated by concerns that a suspect could be picked up on the street because he or she matches the assailant's physical description, but be wholly uninvolved in the action and unable to produce information as to the innocence or guilt of others who were involved. Here, defendants who were not involved in the assault can testify as to why another officer is the truly guilty party.

Criminal line-up procedures are also motivated by concerns about suggestibility, which are inapplicable here. In a criminal line-up where the police officers have identified the suspect, there is concern that the victim will be suggestible and identify the police officer's suspect. Here, there is no suspect; neither plaintiff's counsel nor the Court knows which officers used excessive force against plaintiff. There can be no concern that any party could influence the identification. Where there are no concerns about suggestibility, such as where there is no suspect, standard procedure even in criminal cases is to show crime victims books of mug shots, without the procedural protections defendants seek here. *See, e.g., Mack v. Caspari,* 92 F.3d 637, 642-43 (8th Cir. 1996); *Montgomery v. Greer*, 956 F.2d 677, 678, 680-81 (7th Cir. 1992).

**b.     Defendants will have ample opportunity to seek to discredit Mr. Snoussi**

But this is not a criminal case. Criminal cases, and the Federal Rules of Criminal Procedure, are animated by an entirely different set of policy concerns and constitutional requirements. For example, while defendants here seek the procedural protections of criminal cases, a criminal defendant has no right to cross-examine the witness against him before trial. In the overwhelming majority of criminal cases that never reach trial, defendants must decide whether to plead guilty without any opportunity to confront the victim or any witness.

9

Luckily for defendants, however, this is not a criminal case. Defendants will enjoy ample discovery tools to dissect Mr. Snoussi's identification. In addition to Rule 33 interrogatories, Rule 36 requests for admission, and Rule 26 document demands — none of which is available in criminal cases — defendants have a right under Rule 30 to depose Mr. Snoussi for seven hours. During those seven hours, defendants can cross-examine plaintiff and attempt to prove that his identification is faulty. To the extent defendants seek to confirm plaintiff's "degree of certainty for each identification," Def. Ltr. at 8-9, they can do so at the deposition, and again at trial.

### c. Alternatives are significantly more burdensome

As Judge Dolinger noted in *Castro*, instead of seeking photos, plaintiff could depose all of the defendants and "observe their physical appearances" there. *Castro*, 1995 WL 699730, at *1. Perhaps defendants would prefer they all be deposed. Plaintiff submits, however, that in the absence of a production of photos (which could potentially narrow the list of defendants), such a process would be unnecessary and wasteful. The Court "chose to proceed in a somewhat more efficient manner," by seeking photographs first. *Id.* The photographs should be produced immediately.

## III. Defendants' Meager Authority Is Inapposite and Unpersuasive

Defendants seemingly concede that under the broad liberal discovery rules applicable to civil cases, these photographs are discoverable without any particular procedure. Yet they seek to have this Court draw upon wholly-inapplicable criminal protections in the hope that a complicated array procedure will disadvantage plaintiff. This attempt must fail.

10

### a.   Criminal Procedural Protections have no bearing in this case

Despite defendants' citation to the due process protections that apply in criminal cases, those due process rules have no applicability in a civil case.[7] At the risk of stating the obvious, there are two sets of rules governing actions in federal court: The Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure. The weighty due process considerations that apply where liberty is at stake find no analog in civil cases. In civil cases, "due process considerations are much less weighty." *Carter v. Hewitt*, 617 F.2d 961, 968 (3d Cir. 1980).

Though due process considerations are much less weighty in civil cases, defendants are in some ways fortunate: they get the benefit of protections under the Federal Rules of Civil Procedure that criminal defendants do not receive (*e.g.*, depositions). Ironically, although defendants ground their proposed identification procedure in criminal procedural law, they ask for considerably more than a criminal defendant would be entitled to. First, defendants expect to witness the identification. *See* Def. Ltr. at 8. ("Defendants request permission to record this procedure by stenographic means."). But criminal defendants and their counsel often have no right to be present when a victim views a mug book or photo array. *United States v. Ash*, 413 U.S. 300, 317-21 (1973). Nor are filler photographs required where the police have not identified a suspect. *See, e.g., Mack,* 92 F.3d at 642-43; *Montgomery*, 956 F.2d at 678, 680-81.

Defendants essentially seek to create a third class of litigants — defendants in "civil rights cases involving the police," *Castro*, 1995 WL 699730, at *1, who receive *both* the

---

[7] Defendants' citation to the evidentiary rules precluding the introduction of evidence that would be more prejudicial than probative, Def. Ltr. at 3 (citing Fed. R. Evid. 401, 402), is frivolous, as such rules govern admissibility at trial and expressly do not govern discovery. *See* Fed. R. Civ. P. 26(b) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

due process protections of criminal defendants *and* the broad array of discovery tools available under the Civil Rules. While the attempt is creative, it is unsupportable. On the day the government proposes to permit criminal defendants to depose victims and witnesses, then its request for its employees to receive criminal due process protections in civil cases will have at least some facial legitimacy. Until that day arrives, however, the Federal Civil and Criminal Rules should not be blended to suit the particular desires of federal officers alleged to have violated the United States Constitution.

        **b.**    **The District Court case relied upon by defendants is inapposite, wrong, and unsupported in the Second Circuit**

Rather than point the Court to either of the leading cases in this Circuit, defendants ask the Court to rely on a number of entirely irrelevant criminal cases (as well as *Federal Criminal Practice: A Second Circuit Handbook*), and a civil district court case from a different circuit. *See Davis v. City of Chicago,* 219 F.R.D. 593 (N.D. Ill. 2004). *Davis* is inapposite, wrongly decided, and directly contrary to case law in this Circuit.

First, *Davis* has no precedential value at all. Apparently for tactical reasons, plaintiffs in *Davis* decided not even to oppose defendants' request for a "fair identification procedure." *Id.* at 596. The only dispute in that case was what the procedure should entail. The Court therefore had no occasion to decide whether, in the face of opposition from plaintiff, it had the authority to order *any* identification procedure. To the extent that the Court made any comment about whether, had there been a dispute, such a procedure would have been required, such comment would be pure *dicta*.

Second, *Davis* involved identification of non-defendants. Plaintiffs sought the production of "photographs of every officer who was on duty during the time and at the place of the [four] complained of stops and searches." *Id.* at 594. None of the officers whose

12

photographs they sought was named as a defendant in the action. Here, in marked contrast, plaintiff only seeks photographs of named defendants who *defense* counsel has already admitted participated in the arrest.

In any event, the *Davis* approach has been rejected by *Castro* and *Lozano* and, for the reasons set forth *supra*, is wrong. To the extent the *Davis* Court grounded its decision on its belief that civil defendants are "in a far worse position to challenge the identification's reliability than a similarly situated criminal defendant," Def. Br. at 8 (citing *Davis*, 219 F.R.D. at 598-99), *Davis* is mistaken. As noted, a civil defendant has the right to depose and extensively question the plaintiff who identified him or her; a criminal defendant has no such right. And the stakes in criminal cases are far greater than in a civil case. There are a hundred reasons why the Criminal Rules and the Civil Rules are different: this Court should not be the first in the Second Circuit to blur the two.

## IV. Defendants Have Not Demonstrated That There Is Any Security Concern In Turning Over The Photographs

Failing all else, defendants cite vague, unexplained concerns about "safety and privacy." These concerns are without any evidentiary support and are speculative at best. Defendants do not even contend that the officers in question are undercover officers. All they claim is that they "*may* now, or in the future, work in an undercover capacity." *Id.* (emphasis added). This cannot serve as a ground to limit disclosure, and defendants do not bother to cite even a single case in support of such an absurd proposition. *Cf. Murphy v. West*, 533 F. Supp. 2d 312, 314, 317 (W.D.N.Y. 2008) (ordering production of photos of correctional officers notwithstanding vague claims of "security concerns").

13

To the extent, however, that defendants seek a protective order limiting the use of the photographs to the present litigation, plaintiff would consent to such a protective order.

## CONCLUSION

For the foregoing reasons, defendants' motion for a protective order should be denied and defendants should be ordered to produce the photographs to plaintiff immediately.

Dated: January 9, 2009
      New York, New York

                            EMERY CELLI BRINCKERHOFF
                            & ABADY LLP

                            By: _____
                                Ilann M. Maazel (IM-5724)
                                Debra Greenberger (DG-5159)

                            75 Rockefeller Plaza, 20th Floor
                            New York, New York 10019
                            (212) 763-5000

                            *Attorneys for Plaintiff for Limited Purpose*

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5451 | DATE | 5/14/2003 |
| CASE TITLE | Vargas vs. Blyskal, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Plaintiff's motion to compel police photographs is granted as stated in open court subject to the prior entry of a protective order within five days. No copies of the photographs are to be made. Plaintiff is ordered to return the photographs five days after conclusion of this litigation.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 20 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 17 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |