UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

FAYSAL SNOUSSI,

                          Plaintiff,

      - against -

JOHN BIVONA, Special Agent, F.B.I.,
JOHN AUSTIN, Assistant Supervisor-In-Charge, D.E.A.,
TODD LEPKOFKER, Group Supervisor, D.E.A.,
RODNEY ARRINGTON, Special Agent, D.E.A.,
ROBERT ZACHARIASIEWICZ, Special Agent, D.E.A.,
KENNETH ROBBINS, Former Task Force Officer,
D.E.A.,
OREST ZACHARIASEVYCH, Special Agent, D.E.A.,
JASON SAMUELS, Special Agent, D.H.S.,
MICHAEL O'BRIEN, NYPD Detective, F.B.I., and
ERWIN RAMOS, Physician's Assistant, B.O.P.
(Collectively in their individual capacities),

                       Defendants.

------------------------------------------------------------------- X

Civil Action No.
05 CV 3133

(Dearie, Ch. J)
(Bloom, M.J.)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Mr. Snoussi

Of Counsel:

      Christopher P. Moore
      David Rush
      David Oliwenstein
      Christopher Maranto

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF THE CASE......................................................................................... 1

Facts ................................................................................................................................ 1

Procedural History .......................................................................................................... 3

ARGUMENT.................................................................................................................... 5

I. MR. SNOUSSI'S CLAIMS EASILY SATISFY THE LIBERAL STANDARD OF
RULE 15 .......................................................................................................................... 5

    A.    Defendants Will Not Be Unduly Prejudiced By The Proposed
Amendments ................................................................................................ 7

    B.    Allowing The Amendment Will Not Cause Undue Delay ......................... 8

    C.    Mr. Snoussi Is Acting In Good Faith .......................................................... 9

    D.    Mr. Snoussi's Proposed Claims Are Not Futile.......................................... 9

        1.    Mr. Snoussi Has Stated A Valid Excessive Force Claim Against
Defendants Austin, Samuels, R. Zachariasiewicz, O.
Zachariasevych, Lepkofker, Arrington, Robbins, And O'Brien..... 10

        2.    Mr. Snoussi Has Stated A Valid Excessive Force Claim Against
Defendant Bivona .......................................................................... 12

        3.    Mr. Snoussi Has Stated A Valid Claim For Denial Of Medical
Care Against Defendant Ramos...................................................... 13

            (a)    Defendant Ramos Acted With Deliberate Indifference To
Mr. Snoussi's Serious Medical Need.................................. 13

            (b)    Mr. Snoussi Need Not Plead Exhaustion To State A Valid
Claim.................................................................................... 15

        4.    Mr. Snoussi Has Stated A Valid Claim For Denial Of Medical
Care Against Defendants Bivona, Samuels, Austin, And
Lepkofker....................................................................................... 17

        5.    Mr. Snoussi Has Stated A Valid Equal Protection Claim.............. 18

## TABLE OF CONTENTS

**Page**

II. ALL OF THE CLAIMS IN THE AMENDED COMPLAINT "RELATE BACK" TO
MR. SNOUSSI'S *PRO SE* COMPLAINT AND ARE THEREFORE TIMELY
UNDER RULE 15(C) .................................................................................................. 19

CONCLUSION ..................................................................................................................... 24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

42 U.S.C. § 1997e(a)............................................................................................................ 17

Fed. R. Civ. P. 15(a) ........................................................................................................... 1

Fed. R. Civ. P. 15............................................................................................................... passim

Rule 15(c)............................................................................................................................ 19

Fed. R. Civ. P. 15(c)(1)(B) ................................................................................................ 20


**Cases**

ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.,
No. 08 Civ. 5737 (RMB) (RLE), 2009 WL 773256 (S.D.N.Y. 2009) ................................ 7

Alexis v. McDonald's Rests. of Mass., Inc.,
67 F.3d 341 (1st Cir. 1995)................................................................................................. 19

Aschcroft v. Iqbal,
556 U.S. ___, 129 S. Ct. 1937 (2009)................................................................................. 9, 12, 15

Berrios v. Sprint Corp.,
CV-97-0081 (CPS),1997 U.S. Dist. LEXIS 19259 (E.D.N.Y. Nov. 13, 1997)................. 19-20

Block v. First Blood Assocs.,
988 F.2d 344 (2d Cir.1993)................................................................................................. 6

Chance v. Armstrong,
143 F.3d 698 (2d. Cir. 1998)............................................................................................... 14-15

Conteh v. City of N.Y.,
00 Civ. 5787 (NRB), 2001 U.S. Dist. LEXIS 8851 (S.D.N.Y. June 28, 2001)................. 20, 21

Davis v. Piper Aircraft Corp.,
615 F.2d 606 (5th Cir. 1980) ............................................................................................. 20

DeCarlo v. Fry,
141 F.3d 56 (2d Cir.1998)................................................................................................... 6

Eminence Capital, LLC v. Aspeon, Inc.,
316 F.3d 1048 (9th Cir. 2003) ........................................................................................... 6

## TABLE OF AUTHORITIES

**Page(s)**

Foman v. Davis,
371 U.S. 178 (1968)............................................................................................ 5, 6, 7

Fustok v. Conticommodity Servs., Inc.,
103 F.R.D. 601 (S.D.N.Y. 1984) ........................................................................ 7

Giano v. Goord,
380 F.3d 670 (2d Cir. 2004)............................................................................... 16

Hogan v. Wal-Mart Stores, Inc.,
167 F.3d 781 (2d Cir. 1999)............................................................................... 20

Johnson v. Morel,
876 F.2d 477 (5th Cir. 1989), overruled in part on other grounds,
Harper v. Harris County,
21 F.3d 597 (5th Cir. 1994) ............................................................................... 19

Jones v. Bock,
549 U.S. 199 (2007)....................................................................................13, 15-16

Koal Indus. Corp. v. Asland, S.A.,
808 F. Supp. 1143 (S.D.N.Y. 1992).................................................................... 21

Koehl v. Dalsheim,
85 F.3d 86 (2d Cir. 1996)................................................................................... 14, 15

Lasher v. City of Schenectady,
No. 02-CV-1395, 2004 U.S. Dist. LEXIS 14871 (N.D.N.Y Aug. 3, 2004) ........ 14, 17

Laureano v. Goord,
06 Civ. 785 (SHS) (RLE), 2007 U.S. Dist. LEXIS 74754 (S.D.N.Y. Aug. 31, 2007)....... 20

Linden v. Westchester County,
No. 93 Civ. 8373 (MBM), 1995 U.S. Dist. LEXIS 17204 (S.D.N.Y. Nov. 16, 1995)....... 14

Maxwell v. Green,
No. 1:02CV2153, 2003 U.S. Dist. LEXIS 27409 (N.D. Ohio Dec. 5, 2003) ...................... 23

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
7 F.3d 1085 (2d Cir.1993)................................................................................... 6

Mills v. Fenger,
216 Fed. Appx. 7 (2d Cir. 2006)......................................................................... 13, 16

## TABLE OF AUTHORITIES

**Page(s)**

Miranda-Ortiz v. Deming,
No. 94 Civ. 0476 (CSH), 2001 U.S. Dist. LEXIS 7105 (S.D.N.Y. May 31, 2001) ........... 14

Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.,
715 F.Supp. 578 (S.D.N.Y. 1989) ....................................................................................... 7

Nielsen v. Flower Hosp.,
639 F. Supp. 738 (S.D.N.Y. 1986) ..................................................................................... 20

O'Neill v. Krzeminksi,
839 F.2d 9 (2d Cir. 1988)............................................................................................... 10-11

Ortega v. City of Oakland,
No. C07-02659 JCS, 2008 U.S. Dist. LEXIS 85183 (N.D. Cal. Oct. 8, 2008) ................. 19

Porter v. Nussle,
534 U.S. 516 (2002)........................................................................................................... 18

Roberts v. Tandy/Radio Shack,
No. 98 Civ. 317(DLC), 1998 WL 635542 (S.D.N.Y. Sept. 16, 1998) ............................... 8-9

Roloff v. Arabian Am. Oil Co.,
421 F.2d 420 (2d Cir. 1970)................................................................................................. 5

Satchell v. Dilworth,
745 F.2d 781 (2d Cir. 1984)................................................................................................. 6

Skorupski v. County of Suffolk,
652 F. Supp. 690 (E.D.N.Y. 1987) ................................................................................ 11, 12

Slayton v. Am. Express Co.,
460 F.3d 215 (2d Cir. 2006)..........................................................................................20, 21, 22

Smith v. City of Fontana,
818 F.2d 1411 (9th Cir. 1987), overruled in part on other grounds,
Hodgers-Durgin v. De La Vina,
199 F.3d 1037 (9th Cir. 1999) ........................................................................................... 19

Staskowski v. County of Nassau,
No. 05-CV-5984 (SJF)(WDW), 2007 WL 4198341 (E.D.N.Y. Nov. 21, 2007)................. 9

State Teachers Retirement Bd. v. Fluor Corp.,
654 F.2d 843 (2d Cir.1981)............................................................................................. 7, 8

## TABLE OF AUTHORITIES

**Page(s)**

Tho Dinh Tran v. Alphonse Hotel Corp.,
281 F.3d 23 (2d Cir. 2002)................................................................................................ 21

Vilkhu v. City of N.Y.,
No. 06-CV-2095 (CPS)(JO), 2008 U.S. Dist. LEXIS 36454, (E.D.N.Y. May 5, 2008) ....  18-19

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996)............................................................................................... 15, 17

Ziemba v. Wezner,
366 F.3d 161 (2d Cir. 2004)............................................................................................... 16

### Treatises

6 Wright & Miller, Federal Practice & Procedure, § 1487.................................................

## PRELIMINARY STATEMENT

Mr. Faysal Snoussi seeks leave to file an amended complaint to cure potential defects in his pro se complaint and allege additional claims arising out of the same occurrence upon which his pro se complaint was based. Mr. Snoussi sought Defendants' consent to the Proposed Amended Complaint, annexed hereto, but Defendants refused.

This is the quintessential case for granting leave to amend a complaint. The standard for an amendment under Fed. R. Civ. P. 15(a) begins with a presumption that motions to amend pleadings should be granted. Further, courts have held that this presumption is even stronger where, as here, a plaintiff alleges violations of his civil rights in a pro se complaint.

The proposed claims are meritorious, are brought in good faith, and will neither unduly delay this litigation nor prejudice Defendants. Moreover, all of the amendments arise from a common set of operative facts – the savage beatings inflicted upon Mr. Snoussi by the arresting Defendants and the subsequent denial of medical care necessary to attend to the injuries he suffered as a result of those beatings. Accordingly, the amendments "relate back" to the filing of Mr. Snoussi's pro se complaint and are therefore timely.

## STATEMENT OF THE CASE

### Facts

On February 3, 2003, Mr. Snoussi and his wife awoke to the sound of federal agents and officers with the New York City Police Department storming into their apartment. Second Amended Complaint ("SAC") ¶¶ 24–26. Mr. Snoussi, alarmed by the loud noises, opened his bedroom door and saw agents and officers beating his brother Ismael. Id. ¶ 26. Defendant Samuels immediately grabbed Mr. Snoussi and slammed his naked body to the living room floor. Id. Mr. Snoussi was quickly handcuffed. Id. ¶ 28.

While lying naked and cuffed, Mr. Snoussi was surrounded by several agents and officers and beaten relentlessly. Mr. Snoussi was punched in the face, kicked in the ribs with heavy boots, and smashed on the elbow with a baton. Id. ¶¶ 32, 37. During the entire time that Mr. Snoussi was lying helplessly on the floor, Defendant Austin jammed his boot into his neck. Id. ¶¶ 29, 32. Accompanying this violent physical assault, Mr. Snoussi was bombarded with racially and religiously derogatory remarks, including "fucking Arab" and "fucking terrorist." Id. ¶ 31. Mr. Snoussi did not resist at any point during this painful and terrifying ordeal. Id. ¶ 29.

While enduring his own beating, Mr. Snoussi watched helplessly as several agents and officers continued to violently assault his brother. Id. ¶¶ 26, 33. Mr. Snoussi also observed a group of male agents force his wife out of bed and order her to stand naked in the middle of the room. Id. ¶ 30. As would any person, but particularly as a Muslim Arab, Mr. Snoussi found the experience of witnessing his wife forced to stand naked in the presence strangers, all of whom were men, offensive, humiliating, and degrading. Id.

As a result of this beating, Mr. Snoussi was severely injured and required medical care. Yet, instead of taking him to a hospital, Defendants Bivona, Austin, Samuels, and Lepkofker drove him to a DEA division office for questioning. Id. ¶ 38.

The abuse continued at the DEA division office. Id. ¶ 44. Defendants Bivona, Austin, Lepkofker, and Samuels placed a hot lamp inches from Mr. Snoussi's face, berated him with racial and religious slurs, and accused him of playing a role in the September 11th attacks. Id. Defendants then drove Mr. Snoussi to the federal courthouse for the Southern District of New York, where he was arraigned on charges relating to possession of hashish. Id. ¶ 45.

2

After his arraignment, Defendants transported Mr. Snoussi, who still had not received any medical attention for his injuries, to the Manhattan Correctional Center ("MCC"). Id. ¶ 47. Upon seeing Mr. Snoussi's blackened left eye, severe cuts, bruises, and swelling, Defendant Ramos, a medical professional, immediately determined that Mr. Snoussi required medical treatment and told Defendant Lepkofker and a Bureau of Prisons officer that Mr. Snoussi should be taken to a hospital. Id. ¶¶ 49-50. Instead, Mr. Snoussi was placed in solitary confinement in the Special Housing Unit ("SHU") of the MCC. Id. ¶ 54. While in the SHU, Mr. Snoussi repeatedly asked MCC personnel for medical care and to see Defendant Ramos; each of his requests was ignored. Id. ¶ 55. Instead, for approximately forty to forty-five days, Mr. Snoussi was interrogated in grueling sessions that would last for hours, and was forced to live in a frigid cell with no bed or chair. Id. ¶¶ 57-58.

As a result of Defendants' conduct, Mr. Snoussi sustained substantial physical injuries, which caused him to suffer from continuous and excruciating pain. Id. ¶ 62. The effects have endured to this day. Id. ¶¶ 64-65. Mr. Snoussi remains emotionally scarred and psychologically traumatized, and suffers from painful headaches on a daily basis. Id. ¶ 64.

**Procedural History**

Mr. Snoussi filed his original pro se complaint on June 9, 2005, against two named defendants and several unknown John Doe defendants. See Docket #1; Compl. 1. On July 30, 2007, Defendants filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. See Docket. #96, #106.

In a Memorandum and Order dated August 21, 2008 (the "August 21 Order"), Judge Dearie granted in part and denied in part Defendants' motion to dismiss. The Court noted that Mr. Snoussi had adequately pled a violation of his Fourth Amendment right to be free from

3

excessive force. Id. at 14. However, the Court "dismissed without prejudice" Mr. Snoussi's claim for negligent denial of medical care because Mr. Snoussi "ha[d] not demonstrated" that he had exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Id. at 10. The Court also dismissed Mr. Snoussi's excessive force claim against Defendant Bivona, holding that he was entitled to qualified immunity because of the uncertainty regarding whether verbal threats violate a clearly established right. Id. at 12-13. The Court's Order was silent as to whether dismissal of this claim was with or without prejudice. Finally, the Court dismissed Mr. Snoussi's "verbal harassment" and Equal Protection claims for failure to state a cognizable claim without indicating whether the dismissal was with prejudice. Id. at 14-16.

To facilitate identification of the John Doe defendants, Mr. Snoussi moved to compel production of photographs from Defendants. Judge Bloom granted Mr. Snoussi's motion but ordered that the photographs remain in the custody of his counsel, and not be turned over to him. See Order Dated April 17, 2009, Docket #132. On April 24, 2009, Cleary Gottlieb Steen & Hamilton, LLP, appeared as pro bono counsel on behalf of Mr. Snoussi. See Notice of Appearance, April 24, 2009. During a telephone conference on May 18, 2009, Defendants requested that Mr. Snoussi file an amended complaint. Mr. Snoussi, through his newly appointed pro bono counsel, agreed to this request, and on July 1, 2009, filed his First Amended Complaint. The First Amended Complaint included amendments that cured certain alleged defects in some of the claims that had been dismissed in Judge Dearie's August 21 Order, and included new claims arising out of the allegations made in his original pro se complaint. Defendants communicated their objection to this new complaint during a phone call on July 5, 2009.

4

On July 10, 2009 Magistrate Judge Bloom directed the parties to attempt to compromise and agree on a Second Amended Complaint, and issued an Order stating "defendants are encouraged to respond to [Mr. Snoussi's forthcoming amended complaint] rather than oppose it." Order, July 10, 2009. If no such compromise could be reached, Judge Bloom directed Mr. Snoussi to file a motion for leave to amend his complaint. Id. On July 22, 2009 Mr. Snoussi sent Defendants a draft version of his Second Amended Complaint, which, in the interest of compromise, eliminated viable claims for conspiracy and unlawful search and seizure, and removed any claim against Defendants for acting in their official capacities. Defendants refused to consent to the Second Amended Complaint, and offered no counterproposal. Accordingly, pursuant to the Court's direction, Mr. Snoussi hereby moves for leave to amend the complaint.

## ARGUMENT

## I.    MR. SNOUSSI'S CLAIMS EASILY SATISFY THE LIBERAL STANDARD OF RULE 15

This litigation presents an exceptionally compelling case for granting leave to amend a pro se complaint. The Rule 15 inquiry is animated by a simple premise: "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1968). Leave should be freely given "[i]n the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." Id. The Second Circuit has emphasized, "[t]his mandate that leave to amend be freely given is to be heeded[,]" Roloff v. Arabian Am. Oil Co., 421 F.2d 240, 242 (2d Cir. 1970), and the opposing

5

party has the burden of proving one of the <u>Foman</u> exceptions.  <u>See</u> <u>Block v. First Blood Assoc.</u>,
988 F.2d 344, 350 (2d Cir. 1993).

        In the case of a <u>pro se</u> plaintiff alleging violations of his civil rights, the standard
for allowing an amendment is even more generous.[1]  "A <u>pro se</u> plaintiff who brings a civil rights
action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes
the request after the court has entered judgment dismissing his original complaint."  <u>Satchell v.</u>
<u>Dilworth</u>, 745 F.2d 781, 785 (2d Cir. 1984) (citation omitted).  Additionally, dismissal with
prejudice and without leave to amend is not appropriate unless it is clear "that the complaint
could not be saved by amendment."  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048,
1052 (9th Cir. 2003) (per curiam).[2]  This standard requires that Mr. Snoussi be afforded a
reasonable opportunity to cure the defects in his <u>pro se</u> complaint.[3]

        As the Supreme Court explained in <u>Foman</u>, leave to amend should be freely
granted in the absence of undue prejudice, undue delay, bad faith, repeated failure to cure
deficiencies by amendments previously allowed,[4] or futility of the proposed amendment.
<u>Foman</u>, 371 U.S. at 182.  None of the concerns articulated by the Court in <u>Foman</u> exists here.

---

[1] Though Mr. Snoussi is currently represented by pro bono counsel, he was preceding <u>pro se</u> when he filed his
original complaint.  <u>See</u> <u>DeCarlo v. Fry</u>, 141 F.3d 56, 62 (2d Cir. 1998) (finding that plaintiffs should be granted
leave to amend the complaint, which had been filed <u>pro se</u>, even after pro bono counsel had been retained).

[2] Judge Dearie's opinion and order on Defendants' motion to dismiss expressly dismissed certain claims without
prejudice.  The opinion, however, was silent with respect to whether Mr. Snoussi's claims against Defendant Bivona
and his claim for denial of Equal Protection were dismissed with or without prejudice.  Because the Second Circuit
has made clear that dismissing a <u>pro se</u> civil rights complaint without granting leave to amend is error, this Court
should read Judge Dearie's order as having dismissed the claims without prejudice.  <u>See</u> <u>Mian v. Donaldson, Lufkin</u>
<u>& Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir.1993) (". . . we think the district court should not have dismissed
[plaintiff's] complaint with prejudice, but should have given him the opportunity to amend his complaint in light of
the policy to liberally construe civil rights complaints . . . and especially because this complaint was filed by a <u>pro se</u>
plaintiff").

[3] The liberal standard for amending a <u>pro se</u> civil rights complaint exists for good reason, and the present case is
illustrative.  When Mr. Snoussi filed his <u>pro se</u> complaint, he did so without the assistance of counsel and with only
a limited understanding of English.

[4] Because no amendments had previously been allowed in this case, Mr. Snoussi will not address this factor.

6

**A.** **Defendants Will Not Be Unduly Prejudiced By The Proposed Amendments**

Permitting Mr. Snoussi's Second Amended Complaint will not prejudice

Defendants. In determining whether to allow an amendment, courts examine the prejudicial

impact of the proposed claims. Foman, 371 U.S. at 182.[5] Under this analysis, courts consider

prejudice to both the moving and the non-moving parties. See, e.g., Fustok v. Conticommodity

Servs., Inc., 103 F.R.D. 601 (S.D.N.Y. 1984).

Here, the government cannot show any prejudice, let alone the requisite undue

prejudice required to defeat a proposed amendment. Judge Dearie has already noted that Mr.

Snoussi has stated a claim for excessive force. As the proposed claims all arise from the same

occurrence as the excessive force claim, any additional burden created by discovery would be de

minimis. See Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 715 F. Supp. 578, 581 (S.D.N.Y.

1989) ("It is difficult to imagine an amendment to pleadings under Rule 15(a) that would not

create some increased work to the opposing party.") (emphasis added) (internal quotation

omitted). As discovery has not even commenced, Defendants will not be prejudiced. Indeed,

courts routinely allow amendments of pleadings in cases far more advanced than the instant

action. See, e.g., State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)

(upholding the authorization of an amendment after discovery had been completed).[6]

---

[5] Factors relevant to the prejudice inquiry include whether the non-moving party will have to engage in significant new preparation, the expense and burden of a lengthier more complicated trial, and risk of new issues confusing the jury. See 6 Wright & Miller, Federal Practice and Procedure, § 1487 (canvassing the case law and listing relevant factors).

[6] The prejudice exception is generally successfully invoked only in cases where discovery has closed and the parties have prepared for trial. ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc., No. 08 Civ. 5737 (RMB) (RLE), 2009 WL 773256 at *4 (S.D.N.Y. Mar. 23, 2009) (citing Berman v. Parco, 986 F. Supp. 195 (S.D.N.Y. 1996) ("Where discovery has been closed, subsequent amendment to the pleadings may be prejudicial to the opposing party.")).

In contrast, Mr. Snoussi would be irreparably harmed if the Court were to deny his motion to amend. Without amending his complaint, Mr. Snoussi has no avenue to redress the violations of his rights to medical care and Equal Protection.

**B.     Allowing The Amendment Will Not Cause Undue Delay**

Allowing the amendment would not result in any delay. The proposed new claims are based on the same set of facts as Mr. Snoussi's excessive force claim and will not require significant additional discovery.[7] In addition to considering whether an amendment would cause further delay, courts also consider whether a party delayed in seeking to amend. Far from delaying, as soon as pro bono counsel was appointed, Mr. Snoussi's first step was to obtain leave to file an amended complaint. See May 26, 2009 Letter to Judge Bloom, Docket #138. This is not, therefore, "a case where the amendment came on the eve of trial and would result in new problems of proof." State Teachers, 654 F.2d at 856. Here, just as in State Teachers, the Court has not set a trial date, the parties have not filed summary judgment motions, and the amendment will not result in additional discovery. Id. Accordingly, the lack of delay indicates that leave to amend should be granted.

**C.     Mr. Snoussi Is Acting In Good Faith**

Courts also consider whether the party seeking to amend is acting in good faith. State Teachers, 654 F.2d at 856 (2d Cir.1981). Here, Mr. Snoussi seeks to cure defects in his pro se complaint and to allege new claims that arise from the facts detailed in his pro se complaint. Courts have readily accepted these reasons as evidence of good faith, and this Court should do so as well. See, e.g., Roberts v. Tandy/Radio Shack, No. 98 Civ. 317(DLC), 1998 WL 635542 at

---

[7] Even if there is some delay "absent a showing of bad faith or undue prejudice, [mere delay] does not provide a basis for a district court to deny the right to amend." State Teachers, 654 F.2d at 856 (2d Cir. 1981) (holding that the district court abused its discretion by denying leave to amend based on delay alone).

8

*2 (S.D.N.Y. Sept. 16, 1998) (accepting the curing of a defective complaint as a good faith reason to amend).[8]

### D.   Mr. Snoussi's Proposed Claims Are Not Futile

"The party opposing an amendment has the burden of establishing that leave to amend would be . . . futile . . . . If the movant has at least colorable grounds for relief, justice requires that the court grant leave to amend a complaint." Staskowski v. County of Nassau, No. 05-CV-5984 (SJF)(WDW), 2007 WL 4198341, at *4 (E.D.N.Y. Nov. 21, 2007) (citation omitted). A proposed amendment is "'futile' if it would fail to survive a motion to dismiss pursuant to Rule 12(b)(6)." Id. at *2 (quotations and citations omitted). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. The Supreme Court has emphasized that "[t]he plausibility standard is not akin to a probability requirement." Id. at 1949 (citation omitted). Because each claim in the Second Amended Complaint is legally cognizable, they are not barred by the futility exception.

---

[8] In addition, the procedural history of this case indicates that Mr. Snoussi has acted in good faith throughout the entirety of the litigation. For example, when evidence offered by Defendants demonstrated that former Defendant, Glenn Osterman, "performed his job within the scope of his duties," Mr. Snoussi voluntarily asked this Court to dismiss all claims against him. Letter from Plaintiff to Judge Bloom, dated Sept. 13, 2007, Docket #89.

1.  Mr. Snoussi Has Stated A Valid Excessive Force Claim Against
    Defendants Austin, Samuels, R. Zachariasiewicz, O. Zachariasevych,
    Lepkofker, Arrington, Robbins, And O'Brien

The Second Amended Complaint amends the excessive force claim in two

respects. First, the Second Amended Complaint provides more detailed allegations against

individual Defendants. See SAC ¶¶ 26–29, 31-32, 34-42, 44, 46. Second, the Second Amended

Complaint clarifies that all of these Defendants either abused Mr. Snoussi directly, or observed

the vicious assault and failed to intervene, despite being reasonably able to do so. SAC ¶ 72.

Neither amendment is futile.

The first amendment, which simply pleads more particularized allegations against

specific Defendants, is plainly not futile. As Judge Dearie correctly noted, "plaintiff has

adequately pled a violation of his clearly established Fourth Amendment right to be free of

excessive force." Aug. 21 Order at 14. Judge Dearie's finding was well supported by factual

allegations in the pro se complaint. The new complaint pleads the details of Defendants' conduct

with greater specificity. See SAC ¶¶ 29–37 (describing in detail the abuse perpetrated against

Mr. Snoussi including, inter alia, having his neck stepped on for an extended period, having his

head punched into the floor, being kicked in the ribs, and being called a "fucking Arab.").

Mr. Snoussi has also supplemented his claim for excessive force by alleging that

all Defendants (except Defendant Ramos) either directly participated in the savage assault, or

observed the conduct and failed to intervene, despite being reasonably able to do so. SAC ¶ 72.

As the Second Circuit has held, "a law enforcement officer has an affirmative duty to intercede

on the behalf of a citizen whose constitutional rights are being violated in his presence by other

officers." O'Neill v. Krzeminksi, 839 F.2d 9, 11 (2d Cir. 1988). Where officers have a "realistic

opportunity" to intercede on a victim's behalf to prevent the use of excessive force by other

10

officers, but fail to do so, like Defendants in this case, they are liable as "tacit collaborator[s]." Id. at 11-12.

In this case, the Second Amended Complaint adequately alleges that the above-named Defendants had a realistic opportunity to intercede on Mr. Snoussi's behalf. These defendants were surrounding Mr. Snoussi during the attack. See SAC ¶ 27. The attack lasted for several minutes, providing each of them with ample opportunity to prevent further abuse. See SAC ¶¶ 26-37. Thus, any Defendant who did not directly assault Mr. Snoussi is still liable for his failure to intervene.

Any argument that Mr. Snoussi cannot state a claim because he cannot identify every abuser at every point during the assault is unavailing. Iqbal only requires that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. In the excessive force context, liability is not premised on a plaintiff attributing every blow to an individual defendant. Instead, it is sufficient to attribute physical force to some defendants and failure to intervene to others. See Skorupski v. County of Suffolk, 652 F. Supp. 690, 694 (E.D.N.Y. 1987) ("although the plaintiff could not identify which officer struck him, the defendant officers were liable under § 1983 since 'a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.'") (quoting Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)) (emphasis added). Here, the Second Amended Complaint clearly pleads that all Defendants in Mr. Snoussi's apartment abused him directly or were gathered around him and failed to intervene. Because both allegations give rise to constitutional violations, this Court may "draw the reasonable

11

inference" that all Defendants surrounding Mr. Snoussi are personally liable. Iqbal, 129 S. Ct. at 1949.

> 2.    Mr. Snoussi Has Stated A Valid Excessive Force Claim Against Defendant Bivona

The Court originally held that Defendant Bivona was entitled to qualified immunity because Mr. Snoussi's pro se complaint alleged that Defendant Bivona had only verbally threatened him. The Second Amended Complaint corrects this defect by describing Defendant Bivona's participation in greater detail and clarifies that, like all of the Defendants in Mr. Snoussi's apartment, Defendant Bivona is liable for his failure to intervene in the assault on Mr. Snoussi.

In fact, as clarified in the Second Amended Complaint, the case against Defendant Bivona is especially strong. Among other things, Plaintiff alleges that Defendant Bivona entered Plaintiff's apartment along with the other officers, SAC ¶ 24; was present while other officers repeatedly beat Plaintiff, SAC ¶¶ 27, 31, 35, 37; explicitly acknowledged to Plaintiff that he witnessed the assault, SAC ¶ 39; and observed and participated in verbally abusing Plaintiff, including by using racial and religious epithets, SAC ¶ 44. Just like the other Defendants in Mr. Snoussi's apartment, "Defendant[] Bivona . . . either directly participated in the violation of Mr. Snoussi's Fourth Amendment rights or observed the conduct constituting the above violation and failed to intervene, even though [he was] reasonably able to do so." SAC ¶ 72 (emphasis added). Like all of the other Defendants in Mr. Snoussi's apartment, he is liable either way. See Skorupski, 652 F. Supp. at 694 (E.D.N.Y. 1987).

12

3.      Mr. Snoussi Has Stated A Valid Claim For Denial Of Medical Care
        Against Defendant Ramos

In the Second Amended Complaint, Mr. Snoussi alleges that Defendant Ramos

was deliberately indifferent to the serious injuries he sustained as a result of Defendants' assault.

SAC ¶ 77. This claim was alleged in the original pro se complaint and dismissed without

prejudice because the Court found that Mr. Snoussi "has not demonstrated that he has pursued,

much less exhausted, his administrative remedies pursuant to the PLRA . . ." Memorandum &

Order at 10, Aug. 21, 2008. Mr. Snoussi's proposed amendment to this claim, however, is not

futile. As the Supreme Court has clarified, plaintiffs subject to the PLRA are not required to

plead exhaustion in their complaints. See Jones v. Bock, 549 U.S. 199, 215 (2007). Further,

even if the Court decides to consider exhaustion at this stage of the litigation, Mr. Snoussi's

amended complaint has adequately pled enough facts to show that any failure to exhaust would

be excused. Accordingly, Mr. Snoussi has adequately pled facts sufficient to show a violation of

his Due Process right to medical care.

(a)     Defendant Ramos Acted With Deliberate Indifference To Mr.
        Snoussi's Serious Medical Need

To establish a denial of medical care claim under the Due Process Clause a

detainee must establish "(1) that an official 'denied [him] treatment needed to remedy a serious

medical condition,' and (2) that the official did so 'because of his deliberate indifference to that

need.'" Mills v. Fenger, 216 F. Appx. 7, 10 (2d Cir. 2006) (quoting Weyant v. Okst, 101 F.3d

845, 856 (2d Cir. 1996)). In determining whether a detainee has a serious medical need, courts

consider, inter alia, "the existence of an injury that a reasonable doctor or patient would find

important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial

13

pain." Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). Courts in this circuit have found that serious medical conditions exist or may exist where individuals suffered from abrasions and swelling, a bloody nose, cuts and bruises, and headaches and difficulty seeing. See respectively Miranda-Ortiz v. Deming, No. 94 Civ. 0476 (CSH), 2001 U.S. Dist. LEXIS 7105, at *34-35 (S.D.N.Y. May 31, 2001); Lasher v. City of Schenectady, No. 02-CV-1395, 2004 U.S. Dist. LEXIS 14871, at *16 (N.D.N.Y Aug. 3, 2004); Linden v. Westchester County, No. 93 Civ. 8373 (MBM), 1995 U.S. Dist. LEXIS 17204, at *8 (S.D.N.Y. Nov. 16, 1995); Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996).

Mr. Snoussi's injuries are identical to injuries that courts in this circuit have found to satisfy the serious medical condition prong. Like the plaintiff in Miranda-Ortiz, Mr. Snoussi had visible bruises and swelling on several parts of his body. See 2001 U.S. Dist. LEXIS 7105, at *34-35); SAC ¶ 49. In addition, Mr. Snoussi, like the plaintiff in Lasher, had cuts on his neck. See 2004 U.S. Dist. LEXIS 14871, at *15-17; SAC ¶ 49. And, similarly to the plaintiff in Linden, Mr. Snoussi had other painful bruises caused by the Defendants. 1995 U.S. Dist. LEXIS 17204, at *8; SAC ¶ 49. In addition to these injuries, which are sufficient to satisfy the standard, Mr. Snoussi suffered from other injuries that were even more serious. Specifically, his head was slammed onto the kitchen floor on three occasions. SAC ¶ 32. Mr. Snoussi suffered from nausea and dizziness for several weeks following this injury, and he continues to suffer from headaches to this day. Id. ¶ 63-64. The seriousness of Mr. Snoussi's injuries was so obvious that Defendant Ramos, a medically trained professional, immediately concluded that Mr. Snoussi required treatment at a hospital. Id. ¶ 15, 49. Defendant Ramos's initial assessment was correct – Mr. Snoussi suffered from extreme pain for several weeks and continues to suffer from headaches to this day. See Chance, 143 F.3d at 702 (holding that plaintiff's allegation that "he

14

suffered extreme pain" and experienced other difficulties with daily life was sufficient to get past

a motion to dismiss); Koehl, 85 F.3d at 88 (finding a serious medical need where plaintiff

suffered from, inter alia, headaches and problems seeing).

   The Second Amended Complaint also establishes that Defendant Ramos acted

with deliberate indifference.  Under the deliberate indifference prong, a plaintiff must establish

that an official "acted with reckless disregard for the substantial risk posed by the detainee's

serious medical condition." Weyant, 101 F.3d at 856 (citing Farmer v. Brennan, 511 U.S. 825,

835-36 (1994)).  A plaintiff need not show that the official's actions or omissions were

intentionally designed to cause harm – recklessness is sufficient.  Id. (citing Farmer, 511 U.S. at

835-36).  The Second Amended Complaint pleads that, upon seeing Mr. Snoussi's condition,

Defendant Ramos refused to accept him and "instructed the corrections officer to take Mr.

Snoussi to a hospital."  Id. ¶ 50.  These facts are sufficient to demonstrate that Defendant Ramos

acted with "reckless disregard" for Mr. Snoussi's serious medical needs.  See Iqbal, 129 S. Ct. at

1949.[9]  Thus it is clear that Mr. Snoussi has stated a claim for denial of medical care.

   (b)  Mr. Snoussi Need Not Plead Exhaustion To State A Valid Claim

   Judge Dearie dismissed Plaintiff's denial of medical care claim for failure to

exhaust his administrative remedies.  But as the Supreme Court recently clarified, "failure to

exhaust [administrative remedies] is an affirmative defense under the PLRA, and . . . inmates are

not required to specially plead or demonstrate exhaustion in their complaints."  Jones, 549 U.S.

---

[9] The Second Circuit has not resolved the issue of whether the standard for deliberate indifference is subjective or objective.  Weyant, 101 F.3d at 856.  In any event, Mr. Snoussi's complaint has satisfied the more demanding subjective standard, which requires actual knowledge of a serious medical need.

at 216. Accordingly, Mr. Snoussi's claim for denial of medical care against Defendant Ramos should not be rejected as futile for failure to plead exhaustion.[10]

Further, even if this Court were to consider the exhaustion issue at the motion to dismiss stage, Mr. Snoussi has pled facts sufficient to support an estoppel exception to the exhaustion requirement. See Ziemba v. Wezner, 366 F.3d 161, 163-64 (2d Cir. 2004) (holding that a defendant may be estopped from asserting an inmate's failure to exhaust as an affirmative defense if the defendant's behavior prevented the inmate from properly exhausting). Ziemba also provides that a "district court must allow factual development and address the estoppel claim at the summary judgment stage," not on a motion to dismiss. Id. at 164.

In addition to estoppel, there is a "special circumstances" exception to the exhaustion requirement. Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004). Special circumstances exist when the circumstances "might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Id. at 678. Critically for purposes of the instant motion, this is a fact-sensitive inquiry, and thus inappropriate for resolution on a motion to dismiss. Here, the Second Amended Complaint raises factual questions about Mr. Snoussi's justifications for not properly exhausting administrative grievance procedures. For example, Mr. Snoussi, who at the time spoke only limited English, SAC ¶ 68, alleges that MCC officials ignored his repeated requests for medical attention while he was in solitary confinement. SAC ¶ 54. Furthermore, his only contact with prison officials who could help him file an administrative grievance occurred during extended and intense interrogation sessions. Id. ¶ 57.

---

[10] Nor is Defendant Ramos entitled to qualified immunity. As alleged in the Second Amended Complaint and as explained above, Defendant Ramos was clearly aware of the severity of Mr. Snoussi's injuries, which is why he insisted that Mr. Snoussi be brought to the hospital. SAC ¶ 49-50. Defendant Ramos had an obligation to tend to Mr. Snoussi's injuries but consciously disregarded his serious need for medical attention. "[A] pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired." Mills, 216 Fed. Appx 7. at 11.

16

Accordingly, even if this Court were to consider the exhaustion issue at this stage, which it should not, Mr. Snoussi has adequately pled an estoppel or "special circumstances" exception.

> 4.    Mr. Snoussi Has Stated A Valid Claim For Denial Of Medical Care Against Defendants Bivona, Samuels, Austin, And Lepkofker

As discussed above, supra Section (I)(D)(3)(a), Mr. Snoussi has plainly pled that he had a serious medical need. Mr. Snoussi has also alleged sufficient facts to indicate that Defendants Bivona, Samuels, Austin, and Lepkofker acted with deliberate indifference. Defendants were all gathered around Mr. Snoussi as he was being violently assaulted in his apartment. SAC ¶ 27. The above-named Defendants observed Defendant Austin step on Mr. Snoussi's neck with his heavy boot. Id. ¶ 29. The above-named Defendants also observed and or participated in Mr. Snoussi being brutally punched, kicked, and struck repeatedly with a baton, id. ¶¶ 32, 37, saw Mr. Snoussi's head smash into the floor with every blow to his face, id. ¶ 32, and saw Mr. Snoussi emerge from this violent assault battered, swollen, and traumatized. Id. ¶ 38. Critically, the above-named Defendants all ignored these serious injuries, by choosing to transport Mr. Snoussi to the DEA office and courthouse instead of a hospital. These factors are plainly sufficient to establish deliberate indifference.

The PLRA's exhaustion requirement is inapplicable to this claim. Unlike the deliberate indifference claim against Defendant Ramos, this claim arose before Mr. Snoussi arrived at a detention facility.[11] The PLRA's exhaustion requirement applies only to claims "with respect to prison conditions . . . [brought] by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Because Mr. Snoussi claims that Defendants

---

[11] It is well settled that denial of medical care claims can arise prior to a detainee arriving at a detention facility. The Second Circuit has found liability where officials brought an arrestee to a police station instead of taking him to the hospital, when he was obviously suffering from a serious medical condition. See Weyant, 101 F.3d at 857. Even a delay of two hours in providing needed medical treatment was held to create a triable issue of fact as to whether defendants acted with deliberate indifference. See Lasher, 2004 U.S. Dist. LEXIS 14871, at *17-18.

17

Bivona, Samuels, Austin, and Lepkofker deprived him of necessary medical treatment before

they delivered him to the MCC, this claim is not a claim "with respect to prison conditions." See

Porter v. Nussle, 534 U.S. 516, 531 (2002). Accordingly, the PLRA does not bar this claim.

> 5.      Mr. Snoussi Has Stated A Valid Equal Protection Claim

To state an Equal Protection claim, "a plaintiff must demonstrate that (1) he was

treated differently from other similarly-situated individuals; and (2) the differential treatment

was based on impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious or bad faith intent to injure a person." Vilkhu v.

City of N.Y., No. 06-CV-2095 (CPS)(JO), 2008 U.S. Dist. LEXIS 36454, at *14-15 (E.D.N.Y.

May 5, 2008) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006)). To

demonstrate differential treatment, a plaintiff is not required to point to another individual of a

different race that was treated differently. See id. at *15.

In the Second Amended Complaint, Mr. Snoussi alleges that Defendants singled

him out for the savage beating described in the complaint, failed to intervene, and denied him

needed medical care on account of his race and religion. SAC ¶¶ 5, 30, 31, 44, 52, 83-87. The

Second Amended Complaint further alleges that Defendants made their discriminatory intent

clear when they berated him with racial slurs throughout the assault. SAC ¶¶ 30, 31, 44, 52. In

Vilkhu, like in this case, the plaintiff sued officers who allegedly targeted him based on his

ethnic origin, harassed him verbally with racial slurs, and physically assaulted him several times.

2008 U.S. Dist. LEXIS 36454, at *7-11. The Court in Vilkhu properly concluded that the

plaintiff had adequately pled a violation of his right to Equal Protection, id. at *16, explaining

that, "in this case plaintiff has alleged that racial epithets were directed at him while he was

being physically assaulted by the officer defendants . . . [and] a reasonable juror could find that

18

the racial epithets support the determination that the defendants violated plaintiff's right to equal protection." Id. at *15-16.[12] Here, Mr. Snoussi's factual allegations are in every material respect identical: Defendants berated him with racial epithets as he was being punched, kicked, and stepped on.

In evaluating the sufficiency of the Vilkhu plaintiff's factual allegations the court noted further that, "plaintiff is not required to compare himself to a similarly situated group since he has also alleged that the officers . . . singled him out because of his Indian origin and applied the neutral policy of detaining someone in an intentionally discriminatory manner." Id. at *15 (citation omitted). This is identical to Mr. Snoussi's allegations that Defendants assaulted him, failed to intervene, and denied him medical care "because of his racial, ethnic, and religious background." SAC ¶¶ 83-84. Accordingly, Mr. Snoussi's Equal Protection claim is far from futile.

## II.   ALL OF THE CLAIMS IN THE AMENDED COMPLAINT "RELATE BACK" TO MR. SNOUSSI'S *PRO SE* COMPLAINT AND ARE THEREFORE TIMELY UNDER RULE 15(C)

Mr. Snoussi's new claims and allegations raised in the Second Amended Complaint are not time-barred as they "relate back" to the occurrences set forth in the pro se complaint. See, e.g., Berrios v. Sprint Corp., CV-97-0081 (CPS), 1997 U.S. Dist. LEXIS 19259,

---

[12] Several courts of appeals have upheld similar Equal Protection Claims. Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989), overruled in part on other grounds, Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994) (allegations that defendant police officers verbally harassed plaintiff, using racial slurs, and then arrested him, using unlawful force, because of the officer's racial animus sufficient to support equal protection claim); Alexis v. McDonald's Rest. of Mass., Inc., 67 F.3d 341, 353-54 (1st Cir. 1995) (plaintiff's allegations, supported by evidence of racist statements, that officer's arrest and use of excessive force were motivated by plaintiff's race, presented "trialworthy" Equal Protection claim under § 1983). See also Ortega v. City of Oakland, No. C07-02659 JCS, 2008 U.S. Dist. LEXIS 85183, at *15 (N.D. Cal. Oct. 8, 2008) ("In some circumstances an equal protection claim . . . may lie where plaintiff is subjected to excessive force on the basis of race."); Smith v. City of Fontana, 818 F.2d 1411, 1420-21 (9th Cir. 1987) ("The complaint alleges that officers . . . used excessive force to subdue decedent [the plaintiff] because he was black. . . . If these facts are proved, Mr. Smith was personally denied equal treatment solely because of [his] membership in a disfavored group." (quotations, footnotes, and citations omitted)), overruled in part on other grounds, Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999).

at *13-14 (E.D.N.Y. Nov. 13, 1997); Laureano v. Goord, 06 Civ. 7845 (SHS) (RLE), 2007 U.S.

Dist. LEXIS 74754 (S.D.N.Y. Aug. 31, 2007). Rule 15(c)(1)(B) provides that an amendment

relates back to the date of the original pleading when "the amendment asserts a claim or defense

that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in

the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). Like the other provisions of Rule 15, the

purpose of Rule 15(c)(1)(B) is to permit "maximum opportunity for each claim to be decided on

its merits rather than on procedural technicalities." See Slayton v. Am. Express Co., 460 F.3d

215, 228 (2d Cir. 2006) (internal quotations and citation omitted). Courts therefore employ a

liberal standard in determining whether an amendment relates back.

      Amendments that simply provide greater detail to general allegations set forth in

the original complaint and thereby "render[] prior allegations more definite and precise" are

permitted, as they "relate back" to the original complaint. Id. (quoting Stevelman v. Alias

Research Inc, 174 F.3d 79, 87 (2d Cir. 1999)); see also Conteh v. City of N.Y., 00 Civ. 5787

(NRB), 2001 U.S. Dist. LEXIS 8851, at *8 (S.D.N.Y. June 28, 2001) ("New allegations will

relate back if the allegations amplify the facts alleged in the original pleading or set forth those

facts with greater specificity.").

      Further, an amendment curing a defect in an earlier pleading will also relate back.

See Hogan v. Wal-Mart Stores, Inc., 167 F.3d 781, 783 (2d Cir. 1999). Indeed, "one of the

functions of Rule 15 is to allow amendments to expand or cure defective pleadings." Nielsen v.

Flower Hosp., 639 F. Supp. 738, 744-745 (S.D.N.Y. 1986). A prior dismissal does not prevent

an amended claim from relating back. See Davis v. Piper Aircraft Corp., 615 F.2d 606, 612 n.8

(5th Cir. 1980).

Finally, even where an amendment adds an entirely new claim or theory of

liability, it may still relate back. See Koal Indus. Corp. v. Asland, S.A., 808 F. Supp. 1143, 1158

(S.D.N.Y. 1992) ("An amendment 'that changes only the legal theory of the action, or adds

another claim arising out of the same transaction or occurrence, will relate back.'") (quoting 3

James W. Moore, Moore's Federal Practice ¶ 15.15(3.-2) (1992)). "For a newly added action to

relate back, 'the basic claim must have arisen out of the conduct set forth in the original

pleading.'" Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 36 (2d Cir. 2002) (quoting

Schiavone v. Fortune, 477 U.S. 21, 29 (1986)). The "central inquiry" in this determination is

whether "adequate notice of the matters raised in the amended pleading has been given to the

opposing party within the statute of limitations by the general fact situation alleged in the

original pleading." Slayton, 460 F.3d at 228 (quoting Stevelman, 174 F.3d at 86). A court

making this inquiry will look to see if the amendments and the original complaint "arise out of

the same set of operative facts." Id. at 229. See also Conteh, 2001 U.S. Dist. LEXIS 8851, at

*8-9 (proper analysis is whether amendments and original complaint share a "common core of

operative facts").

Each of the amendments in the Second Amended Complaint fits neatly within the

relation back standards. The pro se complaint asserted that defendants used excessive force by

"pummeling plaintiff with their fists, kicking plaintiff with their feet, and striking him with other

unknown instruments." Compl. ¶ 43. The Second Amended Complaint amplifies these facts by

alleging them in greater detail and providing particularized allegations against individual

defendants. SAC ¶¶ 29, 31, 32, 34, 36-37. These facts simply "render[] prior allegations more

definite and precise," and therefore relate back. Slayton, 460 F.3d at 228.

21

The Second Amended Complaint also alleges that the arresting Defendants failed to intervene to prevent the use of excessive force against Mr. Snoussi. SAC ¶ 35. This theory of liability clearly relates back as it arises out of the identical "set of operative facts" underlying the claim for excessive force in the pro se complaint — the savage beating that defendants inflicted on Mr. Snoussi and the failure of any defendant to take any affirmative steps to stop the abuse. Slayton, 460 F.3d at 229.

Mr. Snoussi's amendment to the excessive force claim against Defendant Bivona relates back because it cures a defect in the pro se complaint. The previous claim against Defendant Bivona was dismissed because of the uncertainty as to whether mere threats violate a clearly established right. See August 21 Order at 13. Mr. Snoussi has cured the defect by pleading facts that detail Defendant Bivona's presence throughout the assault, thereby amplifying facts in the pro se complaint and establishing a claim against him based on his failure to intervene. SAC ¶¶ 35, 37-42, 44.

Mr. Snoussi's amendment to his claim for denial of Equal Protection also cures a defect in the pro se complaint. In his pro se complaint, Mr. Snoussi insufficiently pled this claim by making the conclusory assertion that "[t]he defendants would not have treated similarly situated non-minorities in the same manner." Compl. ¶ 48. The Second Amended Complaint amends the claim to clarify that Mr. Snoussi's Equal Protection claim is not based on a policy or practice. Rather, the Second Amended Complaint alleges that Defendants, by targeting him for a brutal assault, failing to intervene, and denying him medical care, specifically because of his race and religion, denied Mr. Snoussi Equal Protection. SAC ¶¶ 83-84. This amendment does nothing more than cure his defective pleading and therefore relates back to his pro se complaint.

The Second Amended Complaint also cures a defect in the pro se complaint with respect to Mr. Snoussi's claim for denial of medical care against Defendant Ramos. The Second Amended Complaint amplifies certain facts related to this claim, which support an exception to the exhaustion requirement of the PLRA. SAC ¶¶ 54-55, 57, 61. These facts cure the defect in this claim as alleged in the original pleading that resulted in its originally being dismissed without prejudice. The amended claim against Defendant Ramos thus relates back.

Finally, Mr. Snoussi's new claim for denial of medical care against Defendants Bivona, Lepkofker, Samuels, and Austin is based on the exact same "set of operative facts" alleged in the pro se complaint and thus relates back. In his pro se complaint, Mr. Snoussi alleged that, after abusing him, Defendants took him to the MCC. Compl. 6. The amended complaint amplifies this fact to highlight that Defendants failed to take him to a hospital before transporting him to the DEA agency office and the MCC, and claims that they did so in deliberate indifference to his obvious medical needs. SAC ¶ 37–45, 75–78. In Maxwell v. Green, No. 1:02CV2153, 2003 U.S. Dist. LEXIS 27409, *7 (N.D. Ohio Dec. 5, 2003), the court allowed the plaintiff to add a claim for denial of medical care, even though the original complaint only alleged general facts relating to an assault on plaintiff by corrections officers and prison inmates. The instant case presents an even more compelling argument for a finding of relation back, as Mr. Snoussi had already alleged all of the pertinent facts in his pro se complaint.

## CONCLUSION

For the foregoing reasons, Mr. Snoussi's motion for leave to amend his Complaint

should be granted.

Dated: New York, New York
       August 10, 2009

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                              By:_____
                                      Christopher P. Moore

                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000

                              Attorneys for Mr. Snoussi

Of Counsel:[*]
       David Rush
       David Oliwenstein
       Christopher Maranto

---

[*] Counsel would like to thank Andrew Darcy and Joshua Moskovitz for their invaluable contributions to this Memorandum of Law. Mr. Darcy is a third-year law student at Seton Hall University School of Law. Mr. Moskovitz is a third-year law student at Benjamin N. Cardozo School of Law.