UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FAYSAL SNOUSSI,                                    MEMORANDUM & ORDER
                                                   05 CV 3133 (RJD) (LB)
                    Plaintiff,

    -against-

JOHN BIVONA, Special Agent F.B.I,
JOHN AUSTIN, Assistant Supervisor-in-Charge, D.E.A.,
TODD LEPKOFKER, Group Supervisor, D.E.A.,
RODNEY ARRINGTON, Special Agent, D.E.A.,
ROBERT ZACHARIASIEWICZ, Special Agent, D.E.A.,
KENNETH ROBBINS, Former Task Force Officer, D.E.A.,
OREST ZACHARIASEVYCH, Special Agent, D.E.A.,
JASON SAMUELS, Special Agent, D.H.S.,
MICHAEL O'BRIEN, N.Y.P.D. Detective, F.B.I, and
ERWIN RAMOS, Physician's Assistant, B.O.P.,
(Collectively in their individual capacities),

                    Defendants.
------------------------------------------------------------------X

DEARIE, Chief Judge.

Currently before the Court are defendants' objections to Magistrate Judge Bloom's Report and Recommendation ("R&R") (DE 161). Judge Bloom recommends that plaintiff Faysal Snoussi's motion to amend his complaint to add new claims be granted in part and denied in part. For the reasons that follow, the Court overrules defendants' objections and adopts Judge Bloom's R&R in its entirety.

## BACKGROUND

I.  Snoussi's Pro Se Complaint

Snoussi was arrested in the early morning hours of February 3, 2003, at his home in Astoria, Queens on drug conspiracy charges.[1] He filed a pro se complaint in June 2005, alleging

---

[1] Snoussi pleaded guilty to the conspiracy charges.

constitutional violations pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Snoussi alleged that the federal agents and New York City Police Department officers who came to his house on the morning of his arrest beat him severely while yelling racial and religious slurs at him, and that he suffered bruises and swelling to his face, neck, torso and eye, and difficulty breathing. Snoussi named Special Agent John Bivona of the F.B.I., Erwin Ramos, a physician's assistant at the Metropolitan Correctional Center, three enumerated "John Does," and "all other unknown John Does" as defendants. He asserted that defendants: (1) violated his Fourth and Fifth Amendment rights "by lacking 'probable cause' for a 'no-knock warrant' and/or the violation of the knock and announce procedure"; (2) deprived him "of his rights to be free from unreasonable use of excessive force during arrest under the Fourth Amendment"; (3) violated his First, Fourth, and Fifth Amendment rights "when they employed racial and religious statements (slurs) against [him]"; (4) "violated his right to equal protection of the laws as guaranteed by the Fourteenth Amendment" when they verbally abused him; (5) damaged his furnishings and property in violation of his Fifth Amendment right to due process; and (6) that Ramos and John Doe #3 violated his "rights by not providing him adequate medical care . . . for [his] injuries sustained in/during the 'arrest.'"

During discovery, the United States Attorney's Office identified 25 individuals "who may, or may not be, the individuals [that Snoussi] referred to as 'John Doe' defendants." Judge Bloom amended the caption of the complaint to add the identified individuals as defendants. Defendants then moved to dismiss the pro se complaint. In a Memorandum & Order dated August 21, 2008 (the "August 2008 M&O"), the Court dismissed all of Snoussi's claims against defendants Bivona and Ramos. The Court also dismissed all of Snoussi's claims against the remaining defendants except for his claims that the defendants used excessive force when they

arrested him (which the defendants did not move to dismiss), and directed Judge Bloom to conduct limited discovery on the excessive force claims.

II.     Snoussi's Proposed Second Amended Complaint

Snoussi, currently represented by pro bono counsel, moves, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, to amend his complaint to assert new claims against Bivona, Ramos, John Austin, Todd Lepkofker, Rodney Arrington, Robert Zachariasiewicz, Orest Zachariasevych, Jason Samuels, Kenneth Robbins, and Michael O'Brien.[2] Snoussi's proposed Second Amended Complaint ("SAC") alleges that: (1) all defendants (except Ramos) either used excessive force or observed the use of excessive force and failed to intervene to stop it in violation of his Fourth Amendment rights to be free from unlawful searches and seizures; (2) Bivona, Austin, Lepkofker, Samuels, and Ramos denied him necessary medical treatment in violation of his due process rights under the Fifth Amendment; (3) all defendants (except Ramos) assaulted him or failed to intervene to stop others from assaulting him because of his racial, ethnic and religious background in violation of his equal protection rights under the Fifth Amendment; and (4) Bivona, Austin, Lepkofker, and Samuels denied him medical care because of his racial, ethnic and religious background in violation of his equal protection rights under the Fifth Amendment.

In her R&R, Judge Bloom recommends that Snoussi be permitted to proceed on all of his proposed claims except for his denial of medical care claim against defendant Ramos.[3]

---

[2] All of the defendants named in the proposed complaint were identified by the U.S. Attorney's Office as the possible John Does defendants that Snoussi alleged in his pro se complaint and were added to the caption of Snoussi's pro se complaint by Judge Bloom.

[3] Judge Bloom recommends dismissal of Snoussi's claim against Ramos because Snoussi did not exhaust his administrative remedies under the Prison Litigation Reform Act. Snoussi does not

3

Defendants object to the R&R, arguing that Judge Bloom: "(1) misapplied the law of the case doctrine; (2) erred in allowing [Snoussi] to assert a new, time-barred claim against law enforcement officers for denial of medical care; (3) erred by failing to apply the pleading standards set forth in Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); and (4) failed to reach and grant Defendants' argument that [Snoussi's] denial of medical care claim fails as a matter of law." The Court does not agree.

DISCUSSION

I. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that before trial the "court should freely give leave [to amend] when justice so requires." The Supreme Court has held that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require, be 'freely given.'" Tyree v. Zenk, 2009 WL 1456554, at *4 (May 22, 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

In reviewing a magistrate judge's decision on a motion to amend the complaint, the district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("As a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent. . . . [Rule 72(a)] provides that '[t]he district judge to whom the case is assigned shall consider [a party's] objections and shall modify or set aside any portion of the magistrate judge's order

---

object to Judge Bloom's recommendation and the Court, finding no clear error in Judge Bloom's analysis, adopts her recommendation.

4

found to be clearly erroneous or contrary to law.'"); cf. Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) ("We review the denial of leave to amend a complaint under an abuse of discretion standard.")).[4] "A district court will find a magistrate judge's order 'clearly erroneous' only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Tyree, 2009 WL 1456554, at *4 (quoting United Parcel Service of America, Inc. v. The Net, Inc., 222 F.R.D. 69, 70-71 (E.D.N.Y. 2004)). An order is "'contrary to law' if it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. (citing Kalra v. City of New York, 2009 WL 857391, at *3 (S.D.N.Y. Mar. 31, 2009) (citations and quotations omitted)).

II. Law of the Case Doctrine

Defendants argue that the law of the case doctrine bars Snoussi's excessive force claim against defendant Bivona and Snoussi's equal protection claims against all defendants. The crux of their argument is that in its August 2008 M&O the Court considered and dismissed these claims and limited Snoussi's right to replead when it directed Judge Bloom "to conduct limited discovery with regard to the excessive physical force claim."

---

[4] Some district courts have held that *de novo* review is appropriate when a magistrate judge recommends the denial of a motion to amend. Because Snoussi does not object to Judge Bloom's recommendation that his motion to amend his complaint to add claims against defendant Ramos be denied, the Court concludes that it need not decide whether *de novo* or clear error review is necessary and reviews for clear error only. See e.g., Schiller v. City of New York, 2009 WL 497580, at *2 (S.D.N.Y. Feb. 27, 2009) ("Notwithstanding the possibility that a magistrate judge's *denial* of a motion to amend a complaint may be dispositive, the Court concludes that Judge Francis's January 23 Order *granting* Plaintiffs' motion to amend their complaints is non-dispositive, and as such, subject to clear error review only.") (citing Bridgeport Music Inc. v. Universal Music Group, 248 F.R.D. 408, 410 (S.D.N.Y. 2008) (emphasis in Schiller)).[4]

5

The law of the case doctrine "posits that if a court decided a rule of law, that decision should continue to govern in subsequent stages of the same case." Ovadia v. Top Ten Jewelry Corp., 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005) (quoting Aramony v. United Way, 254 F.3d 403, 410 (2d Cir. 2001)). The doctrine "only forecloses consideration of issues that have already been decided." Steinfield v. Marks, 1997 WL 563340, at *3 (S.D.N.Y. Sept. 8, 1997) (citing Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994)). Application of the doctrine is at the trial court's discretion. See S.E.C. v. Badian, 2010 WL 1028256, at *1 n.2 (S.D.N.Y. Mar. 11, 2010) (citing Arizona v. California, 460 U.S. 605, 618 (1983)).

As an initial matter, the Court did not limit Snoussi's right to replead when it directed Judge Bloom to conduct limited discovery on Snoussi's excessive force claims. Moreover, Judge Bloom did not err, let alone clearly err, in concluding that the excessive force claim that Snoussi asserts in his proposed complaint against Bivona is not barred by the law of the case of doctrine. The excessive force claim against Bivona that Snoussi raised in his pro se complaint was predicated on Snoussi's allegation that Bivona threatened to use force against him. The Court dismissed the claim, concluding that Bivona was entitled to qualified immunity because there was considerable uncertainty in the law about whether the mere threat of force could be considered excessive force. Snoussi's excessive force claim against Bivona in his proposed complaint is predicated not on allegations that Bivona threatened to use force but on allegations that Bivona failed to intervene to prevent others from using excessive force. In addition to being held liable for the use of excessive force, "[l]aw enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)). Because the Court did not rule on whether

Snoussi's allegations are sufficient to state a claim against Bivona for failing to intervene, the law of the case doctrine does not prohibit Snoussi from bringing this claim.

Judge Bloom also did not clearly err in rejecting defendants' argument that the law of the case doctrine bars the equal protection claims that Snoussi now asserts. The equal protection claims that Snoussi asserted pro se were predicated on allegations that defendants treated him differently than similarly situated individuals because of his race, ethnicity and/or religion. The Court dismissed these "selective enforcement" claims because Snoussi did not sufficiently allege that the defendants would have treated similarly situated non-minorities differently. The equal protection claims that Snoussi raises in his proposed complaint, however, are predicated on allegations that defendants intentionally discriminated against him because of his race, ethnicity and/or religion. Equal protection claims that are predicated on allegations of intentional discrimination do not require a plaintiff to plead the disparate treatment of similarly situated individuals. See Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001). Thus, even assuming, as defendants contend, that the factual allegations underlying Snoussi's pro se selective enforcement claims are similar -- if not identical -- to the allegations underlying his intentional discrimination claims, the Court did not rule on whether the allegations are sufficient to support his claims that the defendants intentionally discriminated against him and the law of the case doctrine does not apply.

III. Relation Back Doctrine

Defendants Bivona, Austin, Samuels, and Lepkofker -- all federal law enforcement agents -- argue that Judge Bloom erred in concluding that Snoussi's proposed claims against them for denial of medical care are not time-barred. The crux of defendants' argument is that Snoussi's pro se complaint did not "include a single allegation to support a claim of indifference

7

to medical needs against" them; rather, the only allegations of denial of medical care were directed against defendant Ramos, the physician's assistant at MCC, and John Doe No. 3, another official at MCC. Therefore, defendants argue, Judge Bloom erred in concluding that the claims against them "relate back" to the allegations in Snoussi's pro se complaint.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The critical inquiry is whether "adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Slayton v. American Express Co., 460 F.3d 215, 228 (2d Cir. 2006) (citing Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir. 1999)). "[N]otwithstanding the 'judicial insistence on notice,' an amended pleading will relate back even where it contains substantial differences or amplifications if 'the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." Thrane v. Franklin First Financial, Ltd., 266 F.R.D. 51, 54 (E.D.N.Y. 2010) (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497 (2d ed. 2009)). The Second Circuit has concluded that the proper standard of review of relation-back decisions is *de novo*. See Slayton, 460 F.3d at 228.

The Court concludes that Snoussi's allegations in his pro se complaint that: (1) the federal agents and New York City Police Department officers who came to his house beat him severely while yelling racial and religious slurs; (2) on the morning of his arrest he was driven "back in [sic] forth between court and the investigation room, and a total lack of medical care for

[his] medical injuries"; and (3) Ramos and John Doe No. 3 failed to provide adequate medical care, put defendants on notice that Snoussi might assert that they denied him medical care.

IV. Sufficiency of the Pleadings

The Court also rejects defendants' argument that Judge Bloom erred in concluding that Snoussi's proposed claims were sufficiently pled. As an initial matter, defendants' contention that Judge Bloom "fails to even mention the Supreme Court's decision in Iqbal and its effect on pleading requirements" is puzzling because Judge Bloom clearly discussed the standards set forth in Iqbal and Twombly. (see R&R at pgs. 4-5.)

In any event, Judge Bloom did not clearly err in concluding that Snoussi sufficiently pled that defendants used excessive force or failed to intervene to stop it. Defendants' arguments that Snoussi's allegations are insufficient because he does not allege that defendants "observed the alleged use of force or that there was a realistic opportunity for anyone to intervene to prevent the harm from occurring" and that Snoussi is being "intentionally vague" about who did what to him because he "simply wants to conduct discovery" are unavailing. Snoussi alleges that the defendants "surrounded" and "congregated around" him during the assault and either used excessive force or did nothing to prevent it. That Snoussi cannot say what each of the defendants did to him is not surprising given his allegations that he was handcuffed, pushed to the floor, had a boot thrust into his neck, and pummeled. Under these circumstances, Snoussi "need not establish who, among a group of officers, directly participated in the attack and who failed to intervene," Ricks v. O'Hanlon, 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010) (quoting Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing Fischl v. Armitage, 128 F.3d 50, 57 (2d Cir. 1997)), as long as "there [was] a realistic opportunity to intervene to prevent the

harm from occurring," id. (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). The Court finds that Judge Bloom clearly did not err in concluding that Snoussi has met his burden.

Nor did Judge Bloom clearly err in concluding that Snoussi sufficiently pled that defendants intentionally discriminated against him on account of his race, national origin and/or religion. Snoussi's allegations that while defendants assaulted him or failed to intervene to stop the assault, they called him a "fucking Arab," a "fucking terrorist," and other "derogatory comments aimed at his religious, ethnic and racial background," are sufficient to state a claim of intentional discrimination. See Vilkhu v. City of New York, 2008 WL 1991099, at *5-6 (E.D.N.Y. May 05, 2008).

Finally, Judge Bloom did not clearly err in concluding that Snoussi's allegations were sufficient to state a claim for deliberate indifference to his medical needs. Snoussi's allegations that (1) "on information and belief"[5] he suffered a concussion from the blows to his head; (2) he suffered bruising, swelling and pain that lasted for several weeks; and (3) upon his arrival at MCC defendant Ramos demanded -- to no avail -- that defendants take him to the hospital for his injuries, are sufficient to state a claim that he suffered a "serious medical condition." See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (factors considered in determining whether a serious medical condition occurred include "[t]he existence of an injury that a

---

[5] Defendants further argue that Snoussi's allegation that "on information and belief, the violent blows to his head caused [him] to sustain a concussion" should not be afforded the presumption of truth. It is well established, however, that "[a]lthough there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible." 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed.). Defendants also argue that Snoussi's medical records establish that he did not suffer an objectively serious medical condition and that his claim should be dismissed for this reason. While Snoussi's medical records may ultimately be used as evidence that he did not suffer a serious medical condition, the ultimate determination of whether he suffered a serious medical condition is for a jury. See Pierre-Antoine v. City of New York, 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006). At the pleading stage, the Court must accept Snoussi's allegations as true.

10

reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain") (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60) (9th Cir. 1992)). Snoussi's allegations that defendants observed the assault and that defendant Ramos directed them to take him to the hospital are sufficient to support his claim that defendants acted with a "sufficiently culpable state of mind" in denying him medical care.

## CONCLUSION

For the reasons stated above, the Court adopts Judge Bloom's R&R in its entirety. Snoussi's proposed SAC is the operative pleading in this action.

SO ORDERED.

Dated: Brooklyn, New York
September 28, 2010

s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge